Lillie N. STERLING et al., Appellants,

v.

Jack W. APPLE, Trustee, Appellee.

No. 16267.

Court of Civil Appeals of Texas, Houston (First Dist.).

June 13, 1974.

Rehearing Denied Aug. 29, 1974.

William M. Nathan, E. W. Newman, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Claude C. Roberts, Houston, for appellee.

EVANS, Justice.

This suit was brought by appellee, Jack W. Apple, Trustee, against defendants, Arthur Williams and wife, Laurence Kelly and Dan Sterling and wife, to specifically enforce an earnest money contract and for related relief.

The Williams', as seller, and Apple, as purchaser, had entered into an earnest money contract dated February 13, 1968 covering .06 acre of land, more or less, in Harris County which provided for a cash purchase price of $450.00 and earnest money in the sum of $50.00 to be deposited with American Title Guaranty Company. The contract further provided that the purchaser agreed to pay accrued ad valorem taxes which the seller represented "to be about $25.00." The executed contract and earnest money were then deposited in escrow with the title company.

Subsequently on March 20, 1968, Williams gave an option to Laurence Kelly, the agent for the appellants Sterling, covering this same tract of land but providing for a purchase price of $900.00 if the option was exercised. This transaction was consummated by conveyance from the Williams' to Laurence Kelly dated March 27, 1968 and Kelly in turn conveyed the property to his principals by deed dated April 2, 1968.

In response to special issues the jury found (1) that Apple had relied on his contract with the Williams' being in force and effect on March 27, 1968 (the date the transaction with Kelly was effected); (2) that Apple, through his representative Lee Sammons, had offered the Williams', prior to March 27, 1968, to complete their contract; (3) that Williams had repudiated the Apple contract on March 20, 1968; (4) that prior to the consummation of the transaction on March 27, 1968 Kelly had notice that Apple was still claiming the right to complete the purchase under his contract with the Williams'; (5) and that prior to March 20, 1968, the date of the granting of the option from Williams to Kelly, Apple had not abandoned his contract with Williams.

The jury further found that (6) Apple had by a course of conduct between February 13, 1968 and March 20, 1968, led the Williams' reasonably to believe that he did not intend to complete the purchase of the land contracted for in the earnest money contract; (7) that the Williams' relied upon this conduct to the extent that they in good faith believed that Apple would not complete the purchase of the property; and (8) that but for such belief Williams would not have granted the option to Kelly.

The jury further found that (9) Kelly as agent for the Sterlings did not act in good faith in purchasing the property and (10) that the reasonable rental value of the property during the period April 1, 1968 to the date of trial was $1500.00.

The trial court entered judgment for Apple, ordering specific performance against appellants Sterling and Kelly, and granting recovery of damages against said appellants, jointly and severally, in the sum of $1500.00 as the reasonable rental value of the premises, and providing that Apple pay to the Sterlings the sum of $900.00, as the purchase price for said property and the sum of $99.48 as the aggregate amount of ad valorem taxes against the property.

No relief was awarded as to the defendants Williams and they do not appeal.

Appellants Sterling and Kelly assert the trial court erred, as a matter of law, in entering judgment for specific performance against the Sterlings; in refusing to disregard the jury's answers to Special Issues 2, 9 and 10 and in adjusting the consideration to be paid by Apple under the contract as set forth above.

Appellee, among other counterpoints, charges that the jury's answers to Special Issues 6, 7 and 8 have no support in the evidence; are supported by insufficient evidence and are against the great weight and preponderance of the evidence and that the trial court properly entered judgment enforcing specific performance of the contract notwithstanding the jury's answers to such issues.

"One who, with knowledge, actual or constructive, of the executory contract acquires the legal title under or through a deed or mortgage executed by the vendor subsequently to an executory contract for the sale of land . . ., may be compelled at the suit of the vendee under the executory contract, to perform the contract by conveying the legal title, if the conditions are such that such relief could be granted against the vendor if he had not transferred the legal title". Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 457 (1943); Antwine v. Reed, 145 Tex. 521, 199 S.W.2d 482 (1947); Gohlke v. Davis, 279 S.W.2d 369 (Tex. Civ.App.—San Antonio 1955, writ ref'd n. r. e.).

The trial court's judgment requiring specific performance of appellants was proper in this case unless the jury's answers to Special Issues 6, 7 and 8 preclude appellee's entitlement to such relief. Appellants contend appellee is estopped because the jury found, in reference to such issues, that appellee by course of conduct prior to March 20, 1968, led Williams to believe he did not intend to complete the purchase of the property and that this belief was relied and acted upon by the Williams'. Assuming these issues would form the basis for an estoppel, we reach the basic question of whether the jury's answers have evidentiary support.

Following the execution of the earnest money agreement on February 13, 1968 and the deposit of the earnest money with the title company, there was apparently no contact, either in person or by telephone, between Mr. Apple and the Williams'.

Mr. Sammons, the agent for Mr. Apple, testified he was contacted in the latter part of February by the title company's escrow officer who informed him of an abstract of judgment shown on the title report; that he called and was advised by Mr. Williams that he was not the same person as named in the abstract of judgment. Mr. Sammons testified he told Mr. Williams there was no need to be concerned about the judgment if Mr. Williams would sign an affidavit stating that he was not the same person as named in the judgment. Sammons testified Mr. Williams said he had not purchased anything from the party holding the judgment but that he was reluctant to sign the affidavit. Sammons also testified he also brought up with Mr. Williams the matter of delinquent ad valorem taxes and advised Mr. Williams that the title company records showed approximately $100.00 in back taxes instead of $25.00 as represented in the contract.

Mr. Williams' testimony confirmed the phone call from Sammons advising about the judgment and taxes. He testified that Sammons told him that he was going to have to pay the excess of back taxes over $25.00, and also testified that Sammons told him his boss wouldn't buy the property "with those terms against it."

The closing papers, including an affidavit to be executed by the Williams' with respect to the abstract of judgment, were apparently mailed directly by the title company's escrow officer to Apple's attorney. In her letter of transmittal dated March 13, 1968 the escrow officer stated her un-

derstanding that either Mr. Apple or his attorney would get the papers signed and returned to her office together with checks covering the closing costs. On March 20, 1968 Apple's attorney sent to Mr. Apple, for his approval, the proposed deed to be executed by the Williams' in consummation of the transaction, together with the proposed affidavit and closing statements with explanation that the deed and affidavit should be executed by the Williams' and acknowledged before a notary public and specifying how the respective closing expenses should be credited and paid.

Mr. Williams testified that after his earlier discussion with Mr. Sammons he had no further call from him until after the property had been sold to Kelly. (On cross-examination he conceded that Mr. Sammons might have come to see him in the latter part of March and that he may have conveyed this information to Kelly but he did not remember having done so.) He testified that about March 19, 1968 he advised Mr. Kelly he was going to check to see what Mr. Apple was going to do about the transaction and he said he thought he called Sammons' or Apple's office but that they weren't in and he was referred to the title company. He said he called the title company who referred him to Mr. Apple's lawyer and left word for the lawyer to call him but that the call was never returned. He indicated he had no further contact with Mr. Sammons, Mr. Apple, the title company or the lawyer until he received letter dated March 29, 1968 from Mr. Apple's lawyer reflecting Mr. Apple's readiness to comply with the contract and indicating legal action unless there was compliance by the Williams'.

The earnest money agreement obligates the seller to furnish either an abstract or an owner's title policy covering the property within 15 days from the seller's acceptance; it provides that if the title company's attorney makes objections to title the seller shall have a reasonable time not to exceed 30 days in which to cure such objections; that in the event of the seller's

failure to furnish good title the purchaser may have the earnest money returned to him or may enforce specific performance of the contract; and that if the purchaser fails to consummate the agreement for any reason except title defects, the seller shall have the right to the earnest money deposit. It further provides that the seller will execute and deliver to the purchaser a general warranty conveyance within 5 days from the date title is shown in the seller.

■ Although appellee apparently undertook the task of obtaining execution of the closing documents furnished by the title company, he was not obligated to do so under the terms of the contract. After appellee had made the earnest money deposit with the title company, he was required to take no further action in the matter until such time as he was tendered the sellers' executed deed and a title policy as provided by the contract. See Stanley Furniture Company v. Texas State Bank, 425 S. W.2d 883 (Tex.Civ.App.—Austin 1968, n. w. h.). It is undisputed that the Williams' never made any request or demand upon appellee, his attorney or the title company for consummation of the transaction nor did they ever tender their deed or title policy as provided by the contract. There was no duty on the part of Apple to do anything other than pay the balance of the purchase price upon tender of the deed and title policy pursuant to the terms of the contract. Block v. Burch, 77 S.W.2d 572 (Tex.Civ.App.—Amarillo 1934, writ dism'd). While Williams may have decided that Apple's conduct indicated an intent on his part not to perform his obligations under the contract, there is no showing that Apple failed to take any action required of him. In the absence of a duty on the part of Apple to take some action which he failed to take, there could be no justifiable reliance which would support an estoppel. See Kuehne v. Denson, 148 Tex. 54, 219 S.W.2d 1006 (1949). That there may have been some delay on the part of appellee in initiating the closing of the transaction does not constitute any basis

for denying appellee the right of specific performance. See Hild v. Linne, 45 Tex. 476 (1876). We fail to find evidence in the record which would support the jury's issues on the theory of estoppel. Appellants' Points of Error 1 through 4 are accordingly overruled.

In appellants' remaining Points 5 and 6, they charge the trial court erroneously attempted to reform the contract and in the absence of pleadings or findings required specific performance upon terms and conditions different from those specified in the contract. They point to the trial court's judgment increasing the amount of the consideration from the stipulated sum of $450.00 to the sum of $900.-00. As appellee points out in his brief, if this was error on the part of the trial court it benefited and did not harm appellants; it is one of which appellee does not specifically complain. These points are overruled.

The judgment of the trial court is affirmed.