**Robert P. GLASS, Appellant,**

v.

**Gary Lee ANDERSON et al., Appellee.**

**No. 17330.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 29, 1979.

Rehearing Denied May 10, 1979.

Schlanger, Cook, Cohn, Mills & Grossberg, Joel W. Cook, Houston, for appellant.

Weitinger, Steelhammer & Tucker, Don A. Weitinger, Don E. Brown, Houston, for appellee.

Before EVANS, WALLACE and WARREN, JJ.

WALLACE, Justice.

Robert P. Glass, defendant, appeals from a judgment for Gary Lee Anderson, plaintiff, for specific performance of earnest money contracts.

Defendant was Seller, Plaintiff and Lon Porter were Purchasers. Porter assigned his interest in the contracts to the plaintiff prior to trial and is not a party to this appeal. On May 14, 1974, the parties entered into six earnest money contracts for six separate tracts of improved, residential real estate. Earnest money of $1200 was paid to Seller and placed in escrow with a title company. Each contract provided ". . . Seller agrees to furnish within fifteen days from acceptance of this contract by Seller, an owner's title policy . . within five days from the date title to the above property is shown in Seller as hereinafter provided, Seller agrees to execute and deliver General Warranty Deed to Purchaser conveying said property . . . at which time Purchaser agrees to pay said consideration in the manner above provided." Total purchase price of all six tracts was $103,000, $25,000 to be paid in cash at time of closing, and Defendant was to carry the balance for fifteen years at 9% interest, the note to be secured by vendor's lien.

Prior to completion of title search by the title company, Plaintiff encountered difficulty in raising the down payment and called the title company to tell them he needed more time. He was advised to "see an attorney," which he did. He also called Defendant and advised him that he could not get financing and wanted his earnest money back. Defendant then had the electricity turned on in three of the houses which were vacant and commenced work to get them ready to rent. On June 13, 1974, Plaintiff's attorney wrote the title company advising that "several of the contracts are unsigned by the Seller and some were re-jected by the Purchaser. You are further directed that you should not commence any title review of the properties if you have not been so informed by Mr. Glass." Upon learning of this letter the Defendant instructed the title company to continue with the title search. On July 18, 1974, Defendant's attorney wrote Plaintiff's attorney enclosing title reports on all six properties and stating, ". . . title to the aforesaid properties appears to be good in Mr. Glass and by this letter he hereby notifies you that he will claim as liquidated damages the deposits you have made with the title company in the event you do not consummate the transaction within a reasonable time in accordance with the Earnest Money Contract." By letter dated July 30, 1974, Plaintiff's attorney wrote Defendant's attorney that "these contracts were repudiated by my client . . . Mr. Glass has attempted to consummate the contracts by executing three originals, but such was done after my client had repudiated same . . . My client further does not intend to close the remaining three contracts as a result of his inability to secure financing therefore."

Plaintiff testified that the July 30 letter was without his knowledge and without his authority. He further testified that immediately upon learning of same he "chased down" Defendant and advised him the letter was in error, that he had financing, and was ready to close. This occurred within ten days of the July 30 letter. On September 20, 1974, Plaintiff's attorney wrote Defendant's attorney offering to make additional payment for repairs made by Defendant to some of the properties, providing the labor and material used were substantiated. Defendant made no further effort to close the transaction, and on October 30, 1974, Plaintiff filed suit to enforce specific performance.

Trial was before the court, which entered judgment for Plaintiff and filed findings of fact and conclusions of law. The pertinent findings of fact were:

1. The repudiation by Plaintiff was withdrawn before Defendant materially changed his position.

2. Defendant did not accept Plaintiff's repudiation of the contract.

3. Subsequent to repudiation and withdrawal of the repudiation by Plaintiff, Plaintiff tendered performance and was ready, willing and able to perform.

4. Defendant refused to tender performance by failing to deliver owner's title policies and warranty deeds as provided by the contracts.

5. Defendant repudiated the contracts.

■■ Defendant assigned as error the court's findings of fact as set out above, alleging "no evidence" and "insufficient evidence" as to no. 3. A "no evidence" point may be sustained only if there is a complete lack of evidence to sustain the challenged findings of fact. *Calvert*, " 'No Evidence' and 'Insufficient Evidence' ", 38 Texas Law Review 361. In considering an "insufficient evidence" point we must consider all the evidence concerning the finding of fact in question and, in light of all the evidence, determine if the ruling of the court was so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Missouri Pacific Railroad Co. v. Somers*, 78 Tex. 439, 14 S.W. 779 (1890).

■■ The trial court was justified in finding a repudiation of the contract by Plaintiff when he contacted Defendant by telephone and demanded his earnest money and by the June 13 letter from Plaintiff's attorney to the title company. That his repudiation was not accepted by Defendant is evidenced by his advising the title company to continue the title search, coupled with his attorney's letter of June 18, 1974, demanding performance by Plaintiff. There was also evidence that on July 30 Plaintiff repudiated the contract by his attorney's letter to Defendant's attorney. However, there is no evidence whatever in the record that Defendant did anything to materially change his position between his July 18 letter demanding performance by Plaintiff, and the admitted conversation between the parties wherein Plaintiff testified that he told Defendant that he had financing and was ready to close. We find that this lack of evidence was sufficient to support the finding of the trial court that Plaintiff withdrew his repudiation before Defendant materially changed his position in reliance thereon. This was also sufficient to support the trial court's finding that Defendant did not accept Plaintiff's repudiation of the contracts. In the conversation between the parties shortly after the July 30 letter, Plaintiff testified that he told Defendant that he had financing and was ready to close the contracts. Defendant did not contradict this testimony, he merely said that he didn't remember what the conversation was about. On September 20 Plaintiff's attorney wrote Defendant's attorney offering to make additional payment for any substantiated repairs made by Defendant. This was sufficient evidence to support the trial court's finding that Plaintiff tendered performance and was ready, willing and able to perform.

■■ The contracts in question required Defendant to deliver owner's title policies and warranty deeds to Plaintiff. Then and only then was Plaintiff obligated by the contract to make the balance of the down payment and execute notes secured by vendor's lien to Defendant for the balance of the purchase price. *Sterling v. Apple*, 513 S.W.2d 255 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ hist.). Defendant testified that he did not offer to deliver either the owner's title policies nor the warranty deeds to Plaintiff. This testimony alone was sufficient to support the finding that the Defendant refused to tender performance by failing to deliver these items as provided by the contracts.

■ According to Plaintiff's testimony, Defendant was orally requested not later than August 10 to close the contracts. He further testified that during the following month he made a number of other oral requests of Defendant to close. On September 20 Plaintiff's attorney wrote Defendant's attorney offering to pay for substantiated repairs. On October 3 suit was filed. During this time Defendant made no effort whatever to perform under the con-

tract. Based upon the period of inactivity by Defendant, faced with repeated requests by Plaintiff to close, the trial court was justified in finding that Defendant repudiated the contract.

■ Based upon these findings, all supported by the evidence, we have a situation of (a) valid contracts, (b) repudiated by Plaintiff, (c) repudiation refused by Defendant, and (d) another repudiation by Plaintiff which was withdrawn prior to any material change of position in reliance thereon by Defendant. The obligations of performance by each party under the terms of the contract were (a) payment of earnest money by Plaintiff, (b) delivery of owner's title policies and warranty deeds by Defendant, and (c) payment of down payment and execution of notes and security instruments by Plaintiff. It is undisputed that Plaintiff paid the earnest money requested of him. It is also undisputed that Defendant did not deliver nor offer to deliver owner's title policies or warranty deeds as was required of him. Thus, Plaintiff was never obligated to pay the balance of the down payment and execute the security instruments. There was not a lack of performance by Plaintiff. The correctness of the trial court's judgment is thus determined by the legal result of Plaintiff's repudiation of the contract on July 30, followed by his retraction of same prior to any material change of position by Defendant in reliance thereon. The Restatement of the Law of Contracts Section 319, approved in *Helsley v. Anderson*, 519 S.W.2d 130 (Tex. Civ.App.—Dallas 1975, no writ hist.), cited by both parties in their briefs, states:

"The effect of repudiation is nullified (a) where statements constituting such a repudiation by information to that effect is given by the repudiator to the injured party before he has brought an action on the breach or has otherwise materially changed his position in reliance on them."

■ Defendant complains of the trial court's finding that interest due him was offset by the rents due the Plaintiff. Texas courts have recognized that where a vendor wrongfully breaches his contract to convey and remains in possession of the land, he must compensate the vendee for the benefit he has derived from such possession. *Kress v. Soules*, 255 S.W.2d 244 (Tex.Civ.App.— Austin 1953, mod. on other grounds 152 Tex. 595, 261 S.W.2d 703 (1953), and *Crossland v. Hart*, 234 S.W. 558 (Tex.Civ.App.— Beaumont 1921, no writ). The trial court properly determined Defendant was accountable to Plaintiff for rents due in the amount stipulated by the parties. The general rule was stated in *Johnson v. Downing and Wooten Construction Co.*:

"[I]n doing equity the court subtracted from the rental loss the interest lost on the money by appellee [vendor] due to the delay. Equity requires such offset . . . [a]s such, it is not a compulsory counterclaim nor need it be pleaded and the trial court's action was proper as an equitable measure. See *Burleson v. Burleson*, 15 Tex. 423, 429 (Tex.Sup.1855)" at 480 S.W.2d 254, 258 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ).

According to the earnest money contract entered into between the parties, closing was to take place "within five days from the date title to the above property in [sic] shown in Seller as hereinafter provided . . . ." Good title to the properties in Defendant was established on July 13, 1974, at which time Plaintiff had repudiated the contracts. Withdrawal of such repudiation was established prior to any material change in position by Defendant, on or about August 10, 1974. Defendant had a reasonable time thereafter to arrange for a closing but did not do so. By September 1, 1974, Defendant had a reasonable amount of time to act and after such time Plaintiff was entitled to rent offset by interest due the Defendant as agreed upon in the contract between the parties. The parties stipulated that the rents due Plaintiff was $15,786.95 less $2,320 due Defendant for labor, leaving a net of $13,466.95. The contracts stipulated 9% per annum interest rate on the $101,800 balance of the purchase price, which equals $25.10 per day. From September 1, 1974 until date of trial was 1059 days. By applying simple arithmetic this

court computes the interest due Defendant at $26,580.90. Defendant is therefore entitled to that amount less $13,466.95 or a net difference of $13,113.95, plus interest thereon at the legal rate from date of trial.

The judgment of the trial court, as reformed, is affirmed.

## ON REHEARING

Appellee, Gary Lee Anderson, moves for a rehearing by this court asserting error in our judgment filed March 29, 1979. That decision affirmed the trial court's order of specific performance by appellant of certain earnest money contracts, and reformed the judgment increasing the interest awarded to appellant to conform with said contracts. The trial court, in its conclusion of law, stated that appellant "is not entitled to a greater amount of interest than the amount of rents and profits due" to appellee. Appellee's position is that this court is bound by the trial court's conclusion that the interest due appellant cannot exceed the rents due appellee.

Appellant repudiated the contracts in question, and after a reasonable amount of time to perform had passed, appellee was entitled to rent, offset by interest due the appellant as agreed upon in the contract between the parties. *Johnson v. Downing and Wooten Construction Co.*, 480 S.W.2d 254 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ). We, however, find error in the trial court's conclusion of law that appellant was entitled to interest under the earnest money contracts only in an amount equal to the rents due appellee.

 An appellate court is bound by the findings of fact made by the trial court if they are supported by the evidence, but an appellate court is not bound by an incorrect conclusion of law made by the trial judge based upon his findings of fact. *Mercedes Dusting Service, Inc. v. Evans*, 353 S.W.2d 894 (Tex.Civ.App.—San Antonio 1962, no writ). No fact question arose from the evidence in respect to the interest due appellant as specified in the contracts entered into between the parties. The determination of the amount of interest due

appellant was a law question for the court. *Texas & N. O. R. Co. v. Dingfelder & Balish*, 134 Tex. 156, 133 S.W.2d 967 (Tex. Comm'n App.1939, opinion adopted). It is a proper function of this court to correct the incorrect conclusion of law and reform the amount of interest to conform with the earnest money contracts which are ordered to be specifically performed. A decree of specific performance is required to conform substantially, if not precisely, to the terms of the contract. *Carter v. Smith*, 184 S.W. 244 (Tex.Civ.App.—Dallas 1916, writ ref'd). Appellee's motion for rehearing is overruled.

Appellant's extensive motion for rehearing has been reviewed, and finding no error, in our opinion, it is overruled.