**Robert P. GLASS, Petitioner,**

v.

**Gary Lee ANDERSON, Respondent.**

**No. B–8563.**

Supreme Court of Texas.

Jan. 23, 1980.

Rehearing Denied March 3, 1980.

Schlanger, Cook, Cohn, Mills & Grossberg, Joel W. Cook, L. H. Lynch, Houston, for petitioner.

Weitinger, Steelhammer & Tucker, Don E. Brown, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for respondent.

SPEARS, Justice.

Buyer Anderson, respondent, sued seller Glass, petitioner, seeking specific performance of six earnest money contracts for the sale of real property. After a non-jury trial, the trial court ordered the contracts specifically performed; the court of civil appeals has affirmed. 582 S.W.2d 479. We reverse the judgment of the court of civil appeals and render judgment for petitioner Glass.

The essential question involved is what effect two separate repudiations of the contracts by the buyer should have on the buyer's right to specific performance. The courts below have held that the buyer's claim for specific performance is unaffected by those repudiations provided he retracts

them prior to any material change of position by the seller. We hold that when the buyer repudiates the contracts after time for performance arrives, the contractual obligations of the non-defaulting party are ended, and the repudiating party cannot obtain specific performance of the contracts.

Buyer Anderson and seller Glass entered into six identical contracts, dated May 14, 1974, for the sale of six separate lots with houses situated in Houston. Each contract was to be signed by the buyer and received by seller by May 25. Apparently this was done. The six contracts, together with $1200 earnest money, $200 for each contract, were delivered to the Capital Title Company on May 29. Certificates, dated May 31, that the properties were free of termites were delivered about that date to the title company.

Each contract provided for a cash down payment and a note for the balance payable over 15 years at 9% interest and secured by a vendor's lien and deed of trust lien. The total purchase price for all six tracts was $103,000 of which $25,000 was "cash to be paid contemporaneously with the conveyance of said property." The contracts further provided for seller "to furnish within 15 days from acceptance of this Contract by Seller, an owner's title policy . . . ." Another provision reads ". . . within 5 days from the date title to the above property is shown in Seller . . . Seller agrees to execute and deliver General Warranty Deed to Purchaser conveying said property free and clear of all encumbrances . . . at which time Purchaser agrees to pay said consideration in the manner above provided."

The buyer, Anderson, testified that he had a limited partnership with a Dr. Lou Porter, a dentist, who was to furnish the cash for their venture. Dr. Porter signed the earnest money contracts as buyer along with Anderson. Porter subsequently assigned all his interest in the contracts to Anderson and is not a party to this appeal. The original plan was to buy the six houses, remodel them, and sell them for a profit.

Anderson sought out the seller, Glass, and tried to buy the properties as early as February or March. When Anderson and Glass finally consummated the agreement evidenced by the six contracts, Anderson had trouble getting the cash down payment from Dr. Porter. About June 1, Anderson called the title company and told the closer that he needed some time to get other funds. He also told Glass that the deal was off, and according to Glass, Anderson called Glass "a crook" for keeping his earnest money. Anderson then sought the advice of an attorney, Charles Herndon, who wrote the title company on June 13:

Gentlemen:

My clients, Mr. Anderson and Mr. Porter, have instructed me to direct that the escrow funds now in your possession with regard to the subject files be held as a result of a disagreement on the part of the parties. You will note that several contracts are unsigned by the Seller and some were rejected by the Purchaser. Mr. Anderson has instructed you with regard to the rejection of the unsigned contracts as well as the Seller. You are further directed that you should not commence any title review of the properties if you have not so been informed by Mr. Glass. If you have any questions concerning this matter, please contact me.

Yours very truly,

Charles Herndon

Glass testified that he considered that the "deal was off." He had the electricity turned back on in two of the three vacant houses so that he could start working on the houses to fix them up to rent. Despite Anderson's repudiation of the contracts, Glass told the title company to continue the title search. Thereafter, the title company issued five title reports dated June 10 and one dated June 19 showing good title in the seller, Glass. Anderson made no objections to the title as required by the contracts, and makes none now inasmuch as he seeks specific performance.

Apparently, nothing further transpired between the two parties until Glass had his attorney, L. H. Lynch, write a letter to Anderson on July 18 and enclose copies of

the title reports on the six tracts. Anderson received the letter stating:

Dear Mr. Anderson:

About five days ago Mr. Glass received from Capital Title Co., Inc. the enclosed title reports on the six (6) pieces of property which you contracted to buy in accordance with the Earnest Money Contracts executed by you and Mr. Glass.

Title to the aforesaid properties appears to be good in Mr. Glass and by this letter he hereby notifies you that he will claim as liquidated damages the deposits you have made with the title company in the event you do not consummate this transaction within a reasonable time in accordance with the Earnest Money Contracts executed in this undertaking.

Respectfully,

L. H. Lynch

Lynch received the following reply dated July 30 from Anderson's attorney, Herndon:

Dear Mr. Lynch:

Your letter dated July 19, 1974 has been referred to me for reply. I previously notified Capital Title Company, by letter dated June 13, 1974, as to my client's position with regard to three Earnest Money Contracts unexecuted by your client. These contracts were repudiated by my client by certain statements made to Mr. Glass and also certain statements made to the appropriate closing officer at Capital Title Company, Inc. Mr. Glass has attempted to consummate the contracts by executing the three originals, but such was done after my client had repudiated same. Therefore, Mr. Glass is not entitled to earnest money in the total sum of $600.00, with reference to the contracts.

My client further does not intend to close the remaining three contracts as result of his inability to secure financing therefor. This was a condition that Mr. Robert P. Glass was aware of at the time of the execution of the documents. My client further makes demand for the balance of the earnest money deposited on such three contracts.

Yours very truly,

Charles Herndon

Herndon's letter unequivocally repudiates all six contracts. Anderson claims, however, that he did not know about the letter and that it was written without his knowledge or authorization. This contention is raised by respondent for the first time in this court. In addition, because there was no sworn denial filed denying Herndon's authority to write the letter as required by Tex.R.Civ.P. 93(h), it is waived. In any event, the July 18 letter was addressed only to Anderson, and the reply of July 30 to Lynch begins, "Your letter dated July 19 (sic), 1974 has been referred to me for reply." The record reflects no other way for Herndon to have come into possession of the letter except that Anderson gave it to him. Anderson does not deny that Herndon represented him generally in the transaction. In such case, the attorney acts as the agent of the client under the general rules of agency. *See Dow Chem. Co. v. Benton*, 163 Tex. 477, 357 S.W.2d 565, 568 (1962). Under the facts of this case, the client is bound by the acts or omissions of the attorney within the scope of the attorney's authority, express, implied, or apparent, in the accomplishment of the purpose for which he was retained. Herndon's letter of July 30 was, under the facts, the act of his client Anderson. Finally, respondent conceded in his brief that the letter of July 30 constituted a repudiation of the contracts.

After the July 30 letter of repudiation was sent to Glass's attorney and on about August 10, Anderson informed Glass that Anderson had by then secured the necessary financing and was ready to close. Glass put Anderson off by saying that he would have to check with his accountant since he had sold some other property in the interim and that he would let Anderson know later. Anderson testified that despite several conversations with Glass over the next several weeks, including an offer to reimburse Glass for certain expenses, Glass refused to go through with the closing.

The trial court's findings of fact pertinent to the questions presented to us were:

(1) Time was not of the essence in the performance of the contracts;

(2) Any repudiation of the contracts by Anderson was withdrawn by Anderson prior to Glass materially changing his position and before any acceptance of the repudiation by Glass;

(3) Any repudiation of the contract was not accepted by Glass;

(4) Subsequent to the withdrawal of the repudiation by Anderson, he tendered performance and was ready, willing and able to perform;

(5) Glass refused to tender performance by failing to deliver owner's title policies and warranty deeds as required by the contracts; and

(6) Glass repudiated the contracts.

The court of civil appeals found that there was evidence to support these findings and overruled "no evidence" and "insufficient evidence" points of error asserted by Glass. We do not disagree with those holdings; however, we hold that under the facts found, Anderson is not entitled to specific performance of the contracts. .

Petitioner Glass asserts in his points of error that Anderson is not entitled to specific performance because Anderson twice repudiated the contracts: on June 13, a date prior to the time for performance, and again on July 30, after time for performance had arrived. Glass contends that the authorities cited by the court of civil appeals, *Sterling v. Apple*, 513 S.W.2d 255 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ), and *Helsley v. Anderson*, 519 S.W.2d 130 (Tex.Civ.App.—Dallas 1975, no writ), do not control this case because in those cases no demand for performance was ever made of the repudiating party that would "put him in default."

Respondent Anderson, on the other hand, says that Glass never "accepted" either repudiation, and because time was not of the essence in the performance of the contract, Anderson could withdraw his repudiations at any time prior to Glass materially changing his position. This rule applies, says Anderson, because his repudiations amount-

ed to no more than anticipatory breaches, not actual breaches, because the time for performance never arrived. Anderson says he never became obligated to pay the balance of the down payment and execute the security agreements because Glass had never tendered the deeds and title policies.

Under the terms of the contracts, the performance of the obligations of both Anderson and Glass was to occur "contemporaneously," i. e., at the same time. Although one provision set that time at five days after title was shown in the seller, which would be five days following June 19 or June 24, another provision provided that the seller furnish a title policy within fifteen days after seller accepted the contracts, which would be fifteen days following May 25 or June 9. The parties understandably disagree about the effect of these provisions in setting a time for performance. Their disagreement merely illustrates the dangers of using "store-bought" printed legal forms. While establishment of the date for performance in the contracts is unclear, it is unnecessary under the facts of this case to fix an exact date.

When Anderson repudiated the contracts in early June, time for performance fixed by the contracts clearly had not yet arrived. The June repudiation, therefore amounted to merely an anticipatory breach. *Herzstein v. Echols & Lynn*, 517 S.W.2d 355, 357 (Tex.Civ.App.—Dallas 1974, no writ). At that time, Glass had the right to pursue several different courses of conduct: (1) he could have treated the anticipatory breach as a total breach of contract and sued for his damages; (2) he could have materially changed his position in reliance on the repudiation; (3) he could have indicated to the other party that he considered the repudiation to be final; or (4) he could have done nothing and awaited the contractual time of performance. *See* 11 S. Williston, Law of Contracts § 1337, at 185–86 (3d ed. 1968). If Glass had followed one of the first three courses of action, Anderson's right to retract his repudiation would have then ended. Restatement of Contracts § 319 (1932)[1].

Because Anderson had repudiated the contracts, Glass was discharged of his own return duty to tender deeds and title policies in accordance with the contracts' terms. *Mathews v. Caldwell,* 258 S.W. 810, 813 (Tex.Comm'n App.1924, judgmt. adopted); *Dickey v. Johnson,* 513 S.W.2d 876, 877 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.); *Zucht v. Stewart Title Guar. Co.,* 207 S.W.2d 414, 418 (Tex.Civ.App.—San Antonio 1974, writ dism'd); *Armstrong v. Palmer,* 218 S.W. 627, 630 (Tex.Civ.App.—Amarillo 1920, writ ref'd); Restatement §§ 306, 280. *See generally* 92 C.J.S. *Vendor & Purchaser* § 229c, at 100 (1955). The proposed Restatement (Second) of Contracts (Tent. Draft No. 7, 1972)[2] supports this view. Prospective § 277 provides:

(2) Where promises have been exchanged for an exchange of performances, one party's repudiation of a duty to render such performance discharges the other party's remaining duties to render such performance.

Prospective § 263 is in accord:

Where all or part of the performances to be exchanged under an exchange of promises are due simultaneously, it is a condition of each party's duties to render such performance that the other party either render or, with manifested present ability to do so, offer performance of his part of the simultaneous exchange.

Having determined that Anderson's repudiation in early June excused Glass's obligation of tendering his performance, we turn next to the effect on the rights of the parties of the demand letter of July 18 and Anderson's subsequent second repudiation of the contracts on July 30.

Ordinarily, time is not of the essence in the performance of a real estate earnest money sales contract in the absence of a clear intent to the contrary. *See* Restatement § 276(e)(i); 58 Tex.Jur.2d *Vendor &*

*Purchaser* § 160, at 369 (1964). By demanding that Anderson perform within a reasonable time and by furnishing the title reports showing a readiness and an ability to convey title to Anderson, however, Glass made time of the essence in the contracts as a matter of law and established the obligation of Anderson to comply with the stated reasonable time limit. *Limpus v. Armstrong,* 3 Mass.App. 19, 322 N.E.2d 187, 190 (1975); *see Huszar v. Certified Realty Co.,* 266 Or. 614, 512 P.2d 982, 985 (1973) (in banc); Restatement § 311. Glass's demand for performance after the contractual time for performance had arrived made time of the essence in performing the contracts even though it was not of the essence originally.

In *Huszar, supra,* the plaintiff-purchaser sued for the return of his $5,000 earnest money which was given pursuant to a written contract for the purchase of a farm. The buyer was to pay $5,000 down as earnest money, $5,000 "upon acceptance of title and delivery of contract" and the balance of $60,000 in installments. The buyer paid the $5,000 earnest money but was unable to borrow the additional $5,000 which he was obligated to pay after receiving the title reports. He reported this to Certified Title and "asked them to attempt to give [him] as much time as possible to raise it." About six weeks later, the buyer was notified that if he didn't come up with the rest of the down payment in ten days, the earnest money would be forfeited. The buyer did not pay the money, nor did he demand performance by the seller, nor did he give notice of any claimed defects in the title. Two months after the ten days expired, the buyer demanded return of the earnest money, representing that he had been and was willing to perform. The court rejected the buyer's claim, holding that since he had failed to show that he had performed his part of the earnest money contract, he was not entitled to the return of his earnest money.

1. All subsequent references to Restatement sections are references to Restatement of Contracts (1932).

2. All subsequent references to the Restatement (Second) of Contracts and to proposed Restatement sections are references to Restatement (Second) of Contracts (Tent. Draft No. 7, 1972) unless otherwise noted.

In *Limpus, supra,* the Massachusetts court observed that when time is not of the essence in a real estate sales transaction and time for performance under the contract passed without a tender of performance by either party, "either, by notice to the other upon unreasonable or unnecessary delay by the latter, might have assigned a reasonable time for the completion of the transaction, thereby making performance within that time of the essence of the contract." We believe that court correctly stated the rule. *See* Restatement (Second) of Contracts § 263.

Additionally, by demanding performance of Anderson in his letter of July 18, Glass did not waive his rights to assert any breach. The applicable rule is stated in Restatement § 320:

> Manifestation by the injured party of a purpose to allow or to require performance by the promisor in spite of repudiation by him, does not nullify its effect as a breach, or prevent it from excusing performance of conditions and from discharging the duty to render a return performance.

The proposed Restatement (Second) of Contracts § 280 is more succinct:

> The injured party does not change the effect of a repudiation by urging the repudiator to perform in spite of his repudiation or to retract his repudiation.

Respondent Anderson strenuously argues that neither the times set out in the contract nor the "reasonable time" set out in the July 18 demand letter can be said to have passed and that demand was premature. Certainly, the contractually stated periods had elapsed by July 18. Fifteen days had passed from the acceptance of the contracts by the seller on May 25 as well as the five days from June 19, the date title to the properties was shown in the seller on the sixth tract. We have already pointed out that Glass was excused from furnishing title policies and deeds under the contracts' terms because of Anderson's prior repudiation. By demanding performance in the July 18 letter, Glass placed upon Anderson a new time limit for performance—a "rea-

sonable time." Anderson's act of repudiating the contracts on July 30, eleven days after receipt of the demand letter of July 18, entitled Glass to treat the contracts at an end without further action on his part. Therefore, it is not necessary for us to determine what a "reasonable time" under the demand letter of July 18 would have been because the repudiation resolved the matter. Anderson, by his own action of repudiating the contracts in the letter of July 30, renounced any right to claim that a "reasonable time" had not run, breached the contracts, and discharged Glass from further obligation under the contracts. *See* Restatement § 311, § 312; Restatement (Second) of Contracts § 260(2).

A breach by non-performance of the contracts after demand had been made by Glass, coupled with or followed by a repudiation of those contracts by Anderson constituted a material breach of the contracts. *See* Restatement § 319, comment *a* & § 312. Glass was then free to treat the contracts as extinguished, and whether he materially changed positions subsequently is immaterial. There must be some point past which the repudiating party may not vacillate back and forth after demand is made of him to perform.

The cases relied upon by the court of civil appeals, *Sterling v. Apple,* 513 S.W.2d 255 (Tex.Civ.App.—Houston 1974, no writ) and *Helsley v. Anderson,* 519 S.W.2d 130 (Tex. Civ.App.—Dallas 1975, no writ), are distinguishable from the one before us. Both cases involve anticipatory breaches, not actual breaches. In neither case did the party seeking specific performance actually repudiate the contract by a positive statement that he would not substantially perform his contractual duty. Furthermore, in neither case was a demand for performance made by either party when the time for performance created by the contract arrived, a fact expressly pointed out in both cases.

In Restatement (Second) of Contracts § 278(1), based on §§ 319 and 280(2) of the present Restatement, it is stated that a repudiation

is nullified by a retraction of the statement if notification of the retraction comes to the attention of the injured party before he materially changes his position in reliance on the repudiation or indicates to the other party that he considers the repudiation to be final.

That this provision applies only to anticipatory breaches is underscored by the statement in proposed comment *a* :

> Such a nullification does not, of course, alter the consequences of any breach by non-performance that may have taken place. If, for example a repudiation accompanies a breach by non-performance, nullification of the repudiation leaves the injured party a claim for damages for the breach . . . .

*See id.*, § 268(2). Anderson could have retracted his June repudiation under the circumstances described in § 278(1), but not after he had committed an actual material breach by non-performance. We hold that Anderson's right to retract his repudiation ended when Anderson materially breached his contract at the time performance arrived.

Anderson argues that neither his repudiation of June 13 nor his repudiation of July 30 was "accepted" by Glass, thus the contracts remained alive and Anderson's right to retract his repudiations before a material change of position by Glass was preserved. We cannot agree. While there is authority in Texas that an anticipatory breach requires both a repudiation and an acceptance by the injured party, the cases requiring acceptance involve leases which have been abandoned during the term of the lease, and we do not believe that they are controlling in this case. *See Warncke v. Tarbutton*, 449 S.W.2d 363, 365 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); *Blakeway v. General Elec. Credit Corp.*, 429 S.W.2d 925, 928 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). Despite early decisions holding that a failure to elect to treat anticipatory repudiation as a breach results in a continuation of the contract obligations on both sides, more recent authorities have refused to follow the rule in cases involving ordinary bilateral contracts. *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 569 (Tex.Civ.App.—Waco 1965, writ dism'd); *Sawyer Farmers Coop. Ass'n v. Linke*, 231 N.W.2d 791, 794 (N.D.1975); *William B. Tanner Co. v. WIOO, Inc.*, 528 F.2d 262, 270 (3d Cir. 1975). *See generally* 4 A. Corbin, Contracts § 981 (1951); 11 S. Williston, Law of Contracts, *supra* §§ 1333–1334.

We have found no case requiring acceptance of a repudiation amounting to a total breach after time for performance has arrived. We therefore hold that the repudiation of the contract after time for performance arrives coupled with a total breach of non-performance· terminates the contract without the necessity of any affirmative action of the non-repudiating party and excuses performance of the contractual obligation on his part. Anderson's attempted retraction after August 1 was ineffectual to breathe life into the expired contracts.

Finally, our holding is in harmony with those cases that hold that specific performance as an equitable remedy is not available to a party that breaches his contract. As this court said in *Bell v. Rudd*, 144 Tex. 491, 191 S.W.2d 841, 843–44 (1946):

> Rudd is in the position of seeking and obtaining specific performance of an agreement which, according to his own evidence, he failed to perform. To be entitled to a specific performance of a contract, one must prove a compliance with all its terms.

A party who asks a court of equity to compel specific performance of a contract must show his own compliance with the contract. Under the record in this case, Anderson has failed to do so. A party cannot be permitted to materially and totally breach his contract, wait until he sees that his bargain will be profitable, and then ask the aid of a court of equity to require the innocent party to perform that contract. *Ferguson v. Kindle*, 396 S.W.2d 626, 630 (Mo.1965). The Restatement (Second) of Contracts § 383 (Tent. Draft No. 14, 1979) is in accord:

> § 383. EFFECT OF BREACH BY PARTY SEEKING RELIEF.

**514**

Specific performance or an injunction may be granted in spite of a breach by the party seeking relief, unless the breach is serious enough to discharge the other party's remaining duties of performance.

Comment *a* under § 383 explains how serious the breach must be:

If a party has himself committed such a serious breach of contract, whether by non-performance or repudiation, as to discharge the other party's remaining duties under the contract, the party in breach is not entitled to relief, equitable or otherwise, if the other party refuses further performance.

We adopt this rule.

The judgments of the courts below are reversed, and judgment is rendered that Anderson is not entitled to specific performance of the contracts and that Glass is entitled to receive the $1200 earnest money under the contracts as liquidated damages.