**BIO–MEDICAL APPLICATIONS OF TEXAS, INC., Plaintiff,**

v.

**MEDICAL MANAGEMENT, P.A. and Austin Cecil Walkes, M.D., Defendants.**

**No. Civ.A. 1:00–CV–886.**

United States District Court, E.D. Texas, Beaumont Division.

March 8, 2002.

Scott D. Marrs, Jeffrey R. Parsons, Beirne Maynard & Parsons, Houston, TX, Paul W. Gertz, Germer & Gertz, Beaumont, TX, for plaintiff.

Matthew L. Hoeg, Andrews Kurth Mayer Day Caldwell & Keeton, Houston, TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendants' Motion for Summary Judgment [Dkt. # 44] and Plaintiff's Motion for Partial Summary Judgment [Dkt. # 50], and the court having reviewed the motions and responses on file is of the opinion that the Defendants' motion be DENIED and Plaintiff's motion be GRANTED.

Plaintiff originally filed its petition in federal court on December 2, 2000 asserting breach of contract claims. In July of 2001, Plaintiff amended its original complaint and added claims of unjust enrichment, misappropriation of trade secrets, conversion of trade fixtures, and trespass to its original breach of contract claims. Defendants have answered and counterclaimed. In November of 2001, Defendants moved for summary judgment on

Plaintiff's breach of the Lease Agreement claims. Plaintiff responded to this motion and filed its own motion for summary judgment on its Lease Agreement claims.

## Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

## Background

The basic facts of this case are undisputed. In 1997, the plaintiff, Bio–Medical Applications of Texas, Inc. (BMA), contacted Dr. Austin Cecil Walkes about leasing space in a building he owned in order to operate a dialysis treatment center in it. Before BMA could begin seeing patients from the center, the plaintiff wanted to renovate the building and needed to obtain certain contracts, licenses, permits, and certifications. On July 28, 1998, BMA and Dr. Walkes entered into a Lease Agreement whereby BMA leased space from Dr. Walkes for a dialysis treatment center. Among other things, the Lease Agreement provided BMA need not begin paying rent until the dialysis center began treating patients. It provided that Dr. Walkes would pay BMA $275,000 upon substantial completion by BMA of the building's renovation (this payment is known as the Tenant Improvement Allowance or TIA). The Lease Agreement also provided that in the event BMA was unable to secure all the necessary contracts, licenses, permits, and certification to operate the center within nine months of entering the Lease Agreement, the lease "shall terminate and neither party shall have any further obligations to the other hereunder."

In August of 1999, over a year after the Lease Agreement had been entered into, BMA had not finished the renovations, nor had it acquired the necessary contracts, licenses, permits and certifications. On August 19, 1999, BMA and Dr. Walkes signed an amendment to the Lease Agreement, which incorporated the original lease. This amendment reduced the amount of rent BMA would be required to pay each month and also reduced the TIA payment due upon substantial completion of the renovations from $275,000 to $225,000.

It is uncontested that the renovations were substantially completed in late November, 1999 and that BMA sent notification of substantial completion to Dr. Walkes's representative on January 21, 2000. It is also uncontested that Dr. Walkes never made the TIA payment and that BMA never acquired the necessary contracts, licenses, permits, and certifications.

Walkes has now filed a motion asking the court to grant summary judgment in his favor on BMA's breach of the Lease Agreement claim. BMA responded and

filed its own motion for summary judgment claiming it is entitled to damages in the amount of $237,489.30 plus attorneys fees, costs, and interest as a matter of law on its breach of the Lease Agreement claim ($225,000 is the TIA payment and $12,489.30 is money allegedly owed for sewer, water, and parking expenses incurred by BMA).

As an initial matter, the court finds that on January 21, 2000, when BMA sent Walkes notification that the renovations had been substantially completed, the parties were operating under a valid contract. While the original Lease Agreement may or may not have terminated nine months after the parties signed it on July 28, 1998, the amendment of August 19, 1999, a signed contract between the two parties, specifically incorporated the Lease Agreement and ratified all terms of the Lease Agreement not inconsistent with it. *See DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex.1999); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30.25 (1999) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document. . . .").

## Walkes' Motion for Summary Judgment on the Breach of the Lease Agreement Claims

BMA argues that Walkes breached the Lease Agreement by 1) failing to pay the TIA upon substantial completion of the renovations; 2) failing to pay for water, sewer, and parking facilities installed by BMA; and 3) refusing to allow BMA to remove "trade fixtures" from the premises. Because the court finds that the parties were operating under a valid contract when BMA substantially completed the renovations, Walkes only argument for why summary judgment should be granted in his favor on this claim is that four months after the TIA payment became due, the contract terminated by its own language and erased any obligations either party had under it since BMA never acquired the necessary contracts, licenses, permits, and certifications. *See* Exhibit B ¶ 26.B of *Walkes' Motion for Summary Judgment*. Basically, Walkes contends that while he may have had a duty to pay the TIA on January 21, 2000, when May 19, 2000 came along without BMA having secured the necessary paper work, ¶ 26.B [1] operated to cancel all obligations, both past and future, the parties owed each other under the contract. For the following reasons, this court finds Walkes's argument unpersuasive.

First, it has long been the rule in Texas that breach by one party excuses performance by the other party. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex.1981); *Glass v. Anderson*, 596 S.W.2d 507, 511 (Tex.1980). Here, the Lease Agreement obligated Walkes to pay the TIA upon substantial completion of the renovations.[2] The only condition on this

---

1. This provision falling under the heading—Contingencies—reads:

    In the event [BMA] is unable to secure all physician contracts, necessary licenses, certifications, including but not limited to Medicare certification, prerequisites, permits and authorizations to operate a dialysis facility at the Premises within nine (9) months of the date hereof, this Lease shall terminate and neither party shall have any further obligation to the other hereunder.

2. The TIA payment provision is found in ¶ 3.B under the heading—Rent—and reads:

    ([Walkes], upon [BMA] substantially completing renovation of the Premises, shall pay [BMA] the sum of *two hundred seventy five thousand dollars $275,000)*. Said sum will be known as the Tenant Improvement Allowance allocated to [BMA] by [Walkes] for renovation.

    This sum was reduced to $225,000 by the August 19, 1999 amendment.

payment was the substantial completion of the renovations. Walkes does not contest that BMA sent him notification of substantial completion on January 21, 2000, nor does he dispute that he never made the TIA payment or any part thereof. Walkes's failure to pay the TIA amounts to a material breach of the Lease Agreement and excuses BMA's obligation to perform under the contract. *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994). As such, ¶ 26.B of the Lease Agreement never became effective because Walkes's breach excused BMA's further performance.

■■■ Second, Walkes argues that because of ¶ 26.B of the Lease Agreement, there ceased to be any contractual basis for BMA's demand of the TIA payment after BMA failed to acquire the necessary contract, licenses, permits, and certifications within nine months of the parties entering into the amendment (May 19, 2000), however, in interpreting ¶ 26.B of the Lease Agreement, the court finds that its plain meaning does not lead to the result sought by Walkes. When interpreting a contract, a court must give effect to the intentions of the parties as expressed in the contract. *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 520 (Tex. 1984). In giving meaning to the provisions of a contract, courts must examine the circumstances surrounding its creation. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 734 (Tex.1981). "With the surrounding circumstances as a background, the court is to examine the document in its entirety in an effort to harmonize and give effect to all the provisions so that none will be regarded as meaningless." *Medical Towers v. St. Luke's Epis. Hosp.,* 750 S.W.2d 820, 823 (Tex.App.—Houston [14th Dist.] 1988, writ denied) (internal citation omitted). In construing contracts, however, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instruments. *GTE Mobil-*

*net of South Texas Ltd. v. Telecell Cellular, Inc.,* 955 S.W.2d 286, 289 (Tex.App.—Houston [1st Dist.] 1997, writ denied).

Walkes argues that ¶ 26.B erases any obligations, past and future, that arose or will arise under the contract if BMA failed to acquire the necessary contracts, licenses, permits, and certifications. Looking at the plain language of the contract and attempting to give effect to the intentions of the parties as expressed in the instrument, the court cannot agree with Walkes's interpretation of this provision.

Examining the contract as a whole, the court finds that ¶ 26.B of the Lease Agreement merely provides the parties with a mechanism for cancelling the lease in the event BMA was unable to acquire the necessary paper work to run a dialysis treatment center out of the premises. This provision protected BMA from having to pay rent for five years on a building it could not use. All this provision does is cut off the accumulation of additional obligations that will arise under the contract in the event certain events occur. Paragraph 26.B is silent about, and thus, has no effect on debts already incurred under the contract.

■■ The language of the provision clearly leads to the interpretation that it does not abrogate debts already incurred under the contract, but rather, merely cuts of the accumulation of additional obligations if certain events occur. The relevant section of the provision reads: "this Lease shall terminate and neither party shall have any *further obligation* to the other hereunder." (emphasis added). The use of the word "further" to modify the word "obligation" indicates an intent to cut off additional or future duties. The need to cancel future obligation arising under the contract (e.g. rent payments) seems quite apparent and reasonable in the event BMA was unable to secure the necessary

paper work to operate the business for which it sought to rent the office space for in the first place.

Walkes has provided no suitable rationale why the court should adopt the interpretation that the final clause of ¶ 26.B was meant to abrogate both future obligations and debts already incurred by the parties under the contract. Furthermore, the court is of the view that to adopt such a position would contradict the plain meaning of this provision.

For these reasons, the court holds that Walkes's motion for summary judgment on BMA's breach of the Lease Agreement claim should be DENIED.

### BMA's Motion for Partial Summary Judgment

BMA filed a motion for partial summary judgment claiming, as a matter of law, Walkes owes it $237,489.30 for breaching the Lease Agreement. Of this amount, $225,000 is for the failure to pay the TIA and $12,489.30 is for the failure to pay costs related to water services, sewer services, and parking. The court will analyze these two claims individually.

*A. Failure to Make the TIA Payment*

Section 3 of the August 19th amendment states: "[Walkes], upon receipt of written notice of [BMA's] substantially completing renovations of the Premises, shall pay to [BMA] the sum of Two Hundred twenty-five Thousand Dollars ($225,000). Said sum will be known as the Tenant Improvement Allocated to [BMA] by [Walkes] for renovation." The only condition this provision places on the payment of the TIA is receipt of written notification of the substantial completion of the renovations by Walkes. It is undisputed that BMA sent Walkes notification of the substantial completion of the renovations on January 21, 2000, and it is further uncontested that Walkes never made any TIA payment. Because these facts are undisputed, BMA contends summary judgment should be granted in its favor on this issue. The court agrees.

Walkes argues that summary judgment should be denied because BMA failed to obtain his approval, as landlord, before making the renovations. Paragraph 6 of the Lease Agreement requires BMA to renovate the building in accordance with plans approved by Walkes. The defendant admits he received a letter from Fresenius Medical Care (FMC), a company he knew to be BMA's parent corporation, requesting him to review their approved preliminary plans for the renovations and to send the plans back, signed, if he approved or with changes if necessary. *See* Exhibit C of *Walkes's Response to Plaintiff's Motion for Partial Summary Judgment.* The letter stated that if he approved the plans, FMC would notify the architects to begin the bid documents. In essence, Walkes was being notified that these were the plaintiff's plans for the renovation and he should make his comments now or else these plans would be followed to renovate the building. These plans were approved and sent back to FMC without comment by a representative of Walkes. See Exhibit D of *Walkes's Response to Plaintiff's Motion for Partial Summary Judgment.* Thus, Walkes had an opportunity to approve the plans, or to request changes, additions, deletions, or indeed to reject the plans.

Walkes further argues that these plans were sent to him in his capacity as medical director and not as landlord. He contends the Lease Agreement required BMA to acquire his approval of the renovation plans in his capacity as landlord, and because he never gave his approval as landlord, he does not need to pay the TIA. The Lease Agreement, however, does not require him to give his approval as landlord. It merely requires the landlord to approve

the renovation plans, but "landlord" is simply a term in the Lease Agreement that refers to Walkes, so under the contract, Walkes needs to approve the plans. As stated above, Walkes did approve the plans, and therefore, the court GRANTS BMA's motion for partial summary judgment on this issue.

### B. Failure to Pay for Water, Sewer, and Parking

 Paragraph 5 of the Lease Agreement states that "[Walkes] agrees to bring water, electricity, gas and sanitary sewer to the Premises in sizes specified by [BMA] and pay for the costs of meters to meter their use." Furthermore, paragraph 28.F states: "[Walkes] shall provide [BMA] with sufficient parking for [BMA's] employees and patients in a location which is adjacent to the Premises. Such parking shall be provided in accordance with all applicable federal, state and local laws, ordinances and regulations." In renovating the premises, BMA spent $9,034.15 for water and sewer lines and $3,455.15 to bring the parking lot into compliance with applicable local, state and federal laws. BMA sent Walkes a letter requesting payment for these expenses on January 4, 2000. Walkes never paid BMA for these expenditures and does not contest their amounts. The court finds that the contract between the parties required Walkes to pay for these renovations, and therefore, the court GRANTS BMA's motion for partial summary judgment on this issue.

### Conclusion

For the preceding reasons, the court DENIES Walkes's Motion for Summary Judgment and GRANTS BMA's Motion for Partial Summary Judgment. It is, therefore,

ORDERED, that Walkes's Motion for Summary Judgment is hereby DENIED. It is further,

ORDERED, that BMA's Motion for Partial Summary Judgment is hereby GRANTED. It is further,

ORDERED, that BMA is awarded actual damages on its Breach of the Lease Agreement claim in the amount of $237,489.30 with pre-judgment interest at the maximum rate allowable by law dating from January 21, 2000 and with post-judgment interest at the maximum rate allowable by law from the date of this Memorandum Opinion. The court retains jurisdiction over the award of costs and reasonable attorneys' fees. Plaintiff's counsel shall submit a judgment computing the amount of damages and pre-judgment interest as soon as practicable.