ACCEPTED
15-25-00155-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:21 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:21:02 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE FIFTEENTH COURT OF APPEALS
# AUSTIN, TEXAS

(On Transfer from the Third Court of Appeals)
Cause No. 03-25-00416-CV

## NEIL GEORGE SWITKOWSKI, Appellant

v.

## COURTNEY SINCLAR ARCHBOLD, Appellee

# APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV

**Filed Pursuant to Texas Rules of Appellate Procedure 38.3 and 57.2**

*(Reply addressing standing, constitutional certification, and jurisdictional fraud under Title IV-D enforcement)*

# Contents

Table of Authorities.................................................................................................... 3

To the honorable Justices of the Fifteenth Circuit Court of Appeals ....................................... 6

Systemic Failure of Executive Enforcement............................................................................ 6

Material Breach: No Duty to Perform ..................................................................................... 7

Ultra Vires Conduct by the OAG............................................................................................ 8

Judicial Duty to Certify Constitutional and Jurisdictional Questions..................................... 8

Appellee's Brief Relies on Form Over Function ..................................................................... 9

Psychological Manipulation and Calculated Alienation......................................................... 10

Procedural Evasion Cannot Override Substantive Violations..................................................11

State Culpability and the Threshold of Criminal Interference.................................................11

Certification as the Only Mechanism to Restore Balance ...................................................... 13

Statement of the Case- Background........................................................................................ 13

Chronological Summary of Preserved Challenges ................................................................. 14

Current Posture ...................................................................................................................... 14

Statement of Issues Presented....................................................................................... 14

Appellee's Arguments and Appellant's Legal Response........................................................ 15

Response to Appellee's Issue No.  1: "Non-Compliant and Frivolous" — Rule 13 / *Low v. Henry*........................................................................................................................... 15

2.   Response to Appellee's Issue No.  2: "Procedurally Defective" — Rule 21a / TRAP 33.1(a) ...................................................................................................................................... 16

3.  Response to Appellee's Issue No.  3: "Waived Constitutional Issues" — TRAP 33.1 & 38.1 ...................................................................................................................................... 17

4.  Response to Appellee's Issue No.  4: "Outside Scope of Enforcement" — Collateral Issues Claim................................................................................................................................. 18

5.  Response to Appellee's Issue No.  5: "Factually in Arrears ($23,000 Claim)" ................... 19

The Appellee's Arrears Claim Is Barred by Her Own Misconduct and Subject to Equitable Offset............................................................................................................................... 19

Response to Appellee's Issue No.  6: "Misrepresenting the Decree" — Visitation by Mutual Agreement...................................................................................................................... 21

Response to Appellee's Issue No.  7: "Pattern of Coercive Conduct / CPS Testimony".......... 22

Response to Appellee's Issue No.  8: "Trial Court Acted Within Its Discretion" — Abuse-of-Discretion Review.............................................................................................................. 23

Response to Appellee's Issue No.  9: "Appellate Brief Inadequate" — TRAP 38.1(i) ............ 24

Response to Appellee's Issue No.  10: "Seeks Deterrence / Sanctions" — Rule 13 & *Chambers v.  O'Quinn*...................................................................................................................... 25

Argument: ...................................................................................................................... 26

Certificate of Compliance (TRAP 9.4(i)(3))...................................................................... 27

Conclusion and Prayer for Relief...................................................................................... 27

Certificate of Service ...................................................................................................... 32

Appendix 1: Calculation of Denied Visitation under the Texas Standard Possession Order.... 33

Accounting, Offset, and the Doctrine of Unclean Hands ....................................................... 37

Appendix 2 – Proof of Attempted Service and Return Receipts ............................................. 39

Appendix 3: Chronological Summary of Preserved Challenges ............................................. 48

**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**

# Table of Authorities

**Cases**

- *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) – Equal protection, selective enforcement

- *Blessing v. Freestone*, 520 U.S. 329 (1997) – Title IV-D fiduciary limits

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) – Fraud upon the court / United States

- *Dobbins v. Redden*, 785 S.W.2d 377 (Tex. 1990) – Material breach bars enforcement

- *Glass v. Anderson*, 596 S.W.2d 507 (Tex. 1980) – Material breach and contract enforceability

- *Park v. Essa Texas Corp.*, 311 S.W.2d 228 (Tex. 1958) – Clean hands doctrine in equity

- *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) – Standing as a prerequisite to jurisdiction

- *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007) – Rule 13 sanctions; evidentiary hearing requirement

- *Gonzalez v. Surplus Ins. Servs.*, 863 S.W.2d 96 (Tex. App.—Beaumont 1993, writ denied) – Refusal of certified mail constitutes waiver of service objection

- *Mathis v. Lockwood*, 166 S.W.3d 743 (Tex. 2005) – Harmless error and due process notice

- *Haines v. Kerner*, 404 U.S. 519 (1972) – Liberal construction of pro se filings

- *In re Baby Boy R.*, 191 S.W.3d 916 (Tex. App.—Dallas 2006, pet. denied) – Pro se pleadings to be liberally construed

- *In re Estate of Aguilar*, 492 S.W.3d 807 (Tex. App.—San Antonio 2016, pet. denied) – Judicial admission through response filings

- *Hernandez v. Ebrom*, 289 S.W.3d 316 (Tex. 2009) – Preservation of constitutional issues through adverse rulings

- *Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011) – Abuse of discretion; lack of evidentiary foundation

- *Ex parte Chambers*, 898 S.W.2d 257 (Tex. 1995) – Ability to pay required for contempt purge condition

- *Sterner v. Marriott Int'l, Inc.*, 390 S.W.3d 599 (Tex. App.—Dallas 2012, no pet.) – Substance over form in appellate briefing

- *Hernandez v. Gallardo*, No. 03-18-00421-CV, 2019 WL 2052115 (Tex. App.—Austin May 9, 2019, no pet.) (mem. op.) – Liberal construction of pro se appeals

- *Chambers v. O'Quinn*, 242 S.W.3d 30 (Tex. 2007) – Findings and notice required for sanctions

- *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) – Unjust enrichment principle

- *Bruen v. New York State Rifle & Pistol Ass'n*, 597 U.S. 1 (2022) – Historical test for constitutional review

- *Loving v. Virginia*, 388 U.S. 1 (1967) – Invalidating state marriage restrictions; equal protection and due process

## Statutes and Codes

**Federal Statutes:**

- 42 U.S.C. § 654 – Federal requirements for Title IV-D plans

- 18 U.S.C. § 1001 – False statements to the United States

- 28 U.S.C. § 3002(15) – Definition of "debt collector" under federal law

**Texas Statutes and Codes:**

- Tex. Fam. Code §§ 231.101–104 – OAG authority limited to cases involving public funds or assignment of rights

- Tex. Fam. Code § 231.016 – Administrative dismissal provisions

- Tex. Fam. Code § 156.101(a)(1) – Grounds for modification based on material and substantial change / interference

- Tex. Penal Code § 25.03 – Interference with Child Custody (state jail felony)

- Tex. Penal Code § 15.02(a) – Criminal conspiracy elements

- Tex. Gov't Code § 402.010(a-1) – Notice to Attorney General of constitutional challenge

- Tex. Civ. Prac. & Rem. Code § 134.002(2) – Definition of unlawful benefit / unjust enrichment

- Tex. Code Crim. Proc. arts. 2.01–2.21 – Duties of peace officers and prosecutors

## Constitutional Provisions:

- U.S. Const. amend. XIV, § 1 – Equal protection and due process

- Tex. Const. art. I, §§ 3, 13, 19 – Equal rights, open courts, and due process clauses

## Rules

- Texas Rule of Appellate Procedure 9.4(i)(2)(B) – Word limit for briefs

- TRAP 33.1(a) – Preservation of error

- TRAP 34.6 – Limitation to record on appeal

- TRAP 38.1(i) – Requirements for appellate briefing

- TRAP 44.1(a) – Harmless error rule

- TRAP 57.2 – Certification of questions to the Texas Supreme Court

- Texas Rule of Civil Procedure 13 – Sanctions for groundless pleadings

- TRCP 21a – Service of pleadings

- TRCP 296–299a – Findings of Fact and Conclusions of Law

- Texas Rules of Evidence 401, 403, 802, 901 – Relevance, prejudice, hearsay, and authentication standards

**Additional References / Authorities**

- *Texas Family Law Practice Manual*, State Bar of Texas – Standard possession orders and enforcement procedures (referenced conceptually)

- *Public Policy Doctrine* – "Clean hands" and mutual compliance principles in equitable proceedings

# To the honorable Justices of the Fifteenth Circuit Court of Appeals

This appeal challenges **enforcement validity, standing, and due process**, not parenthood or morality. It now stands as a case study in how the State of Texas, through the Executive Branch and its Title IV-D agents, enforces selective justice: punishing the Non-Custodial Parent while protecting a Custodial Parent who has committed more than four hundred acts of visitation interference [See Appendix 1] in open defiance of court orders.

For over four years, **no Standard Possession Order has ever been followed.** Appellee Courtney Sinclair Archbold simply "agreed to NEVER agree" to ANYTHING, nullifying all visitation and using the decree's "mutual-agreement" clause as a weapon to erase access entirely.

# Systemic Failure of Executive Enforcement

This conduct is not a private quarrel; it is evidence of a **systemic failure** in how the Executive Branch enforces family-law obligations. The Office of the Attorney General ("OAG") has pursued financial collection under Title IV-D while ignoring an unbroken felony pattern under **Texas Penal Code § 25.03 (Interference with Child Custody)**. Such selective enforcement violates **equal protection** (*Yick Wo v. Hopkins*) (as a class- NCP) and **due process**, transforming Title IV-D into a mechanism of discrimination rather than child welfare.

Since *Blessing v. Freestone*, 520 U.S. 329 (1997), confirms that Title IV-D agencies owe no fiduciary duty to parents or children, the OAG cannot claim to act

as guardian ad litem, trustee, or legal representative of the minors. In reality, it operates a **federally-incentivized debt-collection enterprise**, filing reimbursement claims for funds the State never expended for these minor children, merely collected from one private party and redistributed to another under color of federal authority. These filings generate federal performance bonuses for "enforcement activities" unrelated to public assistance while purporting to act "on behalf of the children" it does not, in law or fact, represent. What should be a child-welfare program has become a **profit-driven collection scheme** that weaponizes the power of the State against one parent for the enrichment of the other and of the agency itself.

What should we call a child-welfare program that's sole business model has become a profit-driven collection scheme that weaponizes the power of the State against one parent for the enrichment of the other and of the agency itself? **Under Texas Penal Code § 15.02(a), a person commits criminal conspiracy when, with intent that a felony be committed (25.03 by the CP and application for reimbursement by the state for funds that were never paid out for these minor children), they agree with one or more persons to engage in conduct constituting the offense (both Appellee's show up to court together and stand at the same table), and one or more of them performs an overt act in furtherance of the agreement by creating a fiction called "in the interest of the minor children."** When state actors knowingly advance false reimbursement claims or coordinate enforcement for financial gain, the elements of conspiracy to defraud are satisfied.

# Material Breach: No Duty to Perform

The decree functions as both a judicial order and a private contract. Under settled Texas law, **a party in material breach cannot enforce the contract** (*Dobbins v. Redden*, 785 S.W.2d 377 (Tex. 1990); *Glass v. Anderson*, 596 S.W.2d 507 (Tex. 1980)). Archbold's refusal to allow possession is a continuing material breach that suspends Appellant's duty to perform any reciprocal financial obligations. Equity does not compel unilateral servitude; it demands mutual compliance.

Even viewed purely as an equitable order, enforcement fails the same test. *Park v. Essa Texas Corp.*, 311 S.W.2d 228 (Tex. 1958) bars equitable relief to one

7

whose hands are unclean. Appellee's conduct forecloses the equitable powers Appellee now seeks to invoke.

# Ultra Vires Conduct by the OAG

The OAG (a law enforcement arm of the Executive branch) was repeatedly notified, through filings and certified correspondence, that Appellee's actions constitute hundreds of felony-grade violations of § 25.03. Yet it persisted in prosecuting Title IV-D enforcement. **Texas Family Code §§ 231.101–104** and **42 U.S.C. § 654** limits the OAG's participation to cases involving ***expended public funds or an assignment of rights***. Neither currently exists here. By proceeding regardless, the agency acted **without standing** and in **ultra vires** violation of its statutory authority, effectively compelling performance on an unenforceable decree while misrepresenting to federal authorities that State funds were expended for these minor children in the amount of [creating another fiction]. Such conduct approaches **fraud upon the United States** (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)) and violates the constitutional separation of powers.

No statute, rule, or equitable doctrine authorizes a court to compel performance under a decree in active, material breach, let alone one in where the breach is a state jail felony vs. a civil contempt charge [which act has more weight on the scales of justice and which act cause more relationship damage?]. The law imposes **mutual obligation, not unilateral servitude.** When one party's ongoing violations reach criminal magnitude and the Executive Branch advances that party's claim despite full knowledge of her misconduct, enforcement is **void ab initio** for want of standing, jurisdiction, and equity.

# Judicial Duty to Certify Constitutional and Jurisdictional Questions

From the outset, beginning with Appellant's *December 2024 Motion to Dismiss for Gross Material Breach of Contract*, this case has presented unresolved constitutional and jurisdictional questions that the trial court was both empowered and obligated to certify for higher review. Those filings explicitly requested judicial certification to the Texas Supreme Court under **TRAP 57.2** and formal

notice under **Texas Government Code § 402.010(a-1)**, triggering the court's duty to notify the Attorney General and evaluate the constitutional validity of the challenged statutes before proceeding with enforcement.

At no point has Appellant been protected by the shield of justice. Instead, the State has acted as both litigant and collector, prosecuting claims **for clients (children nor the CP) it does not possess** in order to recover **funds it never expended**, all initiated by an individual who CURRENTLY remains in **felonious breach of the very decree that created the cause of action in the first place.** Such conduct violates the first principles of due process, equal protection, and separation of powers.

The judiciary cannot remain silent when the Executive Branch transforms a civil family dispute into an instrument of coerced revenue extraction. The OAG's participation, absent standing, fiduciary relationship, or lawful expenditure, amounts to the **use of governmental machinery to collect private debts**, an arrangement indistinguishable in operation from **racketeering under color of state authority.** When an agency files reimbursement claims for nonexistent expenditures, compels payment through contempt, and distributes the proceeds to a private party engaged in ongoing criminal conduct, the process ceases to be law enforcement and becomes **state-sponsored extortion.**

This Court therefore bears a **constitutional duty to intervene**. A ruling from this court in support of the Appellant [and all others similarly situated] or certification to the Texas Supreme Court is necessary not merely to clarify statutory ambiguity, but to protect the integrity of the judiciary itself. The questions presented in Appellants filings, standing of the OAG under Title IV-D, due-process limits on enforcement of a decree in material breach, and the systemic conflict between equity and federal financial incentives, are questions of **first impression and statewide importance** that cannot be left unresolved.

# Appellee's Brief Relies on Form Over Function

Appellee's response does not engage the substance of this appeal. Instead, it deploys **procedural technicalities as weapons of evasion**, attacking the form of Appellant's filings rather than the constitutional and factual substance of the case. Every one of the ten issues Appellee raises, ranging from alleged procedural defects and briefing formalities to claims of frivolity, seeks to avoid the undeniable

truth that Appellee has spent four years willfully violating the decree's access provisions (inflicting extreme emotional distress to both NCP and children) while demanding the State compel financial performance from appellee's victim.

Appellee invokes procedural provisions to inflict extreme emotional distress upon both the Non-Custodial Parent and the children while demanding that the State compel financial performance from her victim. *Blessing v. Freestone* forbids such misuse of Title IV-D authority. The oft-repeated claim that the OAG acts "on behalf of the children" is a legal fiction, there exists no fiduciary duty, no agency relationship, and no expenditure of public funds. What is labeled a "child-support obligation" is, in truth, a private financial obligation enforced as a debt but exempt from the very federal debt-collection protections that govern every other creditor in the nation. Such asymmetry is not justice; it is an institutional farce.

These ten issues are not defenses; they are distractions. They rely on the appearance of procedural order to conceal a reality of ongoing criminality. No amount of citation to Rule 13, TRAP 33.1, or Rule 21a can sanitize a pattern of conduct that, on its face, constitutes more than four hundred violations of **Texas Penal Code § 25.03**. The courts of this State do not exist to elevate technical precision over constitutional justice, nor to grant refuge to a party who has turned parental alienation into a methodical campaign of control.

# Psychological Manipulation and Calculated Alienation

Appellee's conduct has never been the product of ignorance or misunderstanding. Appellee possesses a master's degree in Organizational Psychology, a discipline centered on behavioral analysis, motivational theory, and manipulation of interpersonal dynamics. Her education and professional training provide her with expert-level understanding of how to influence, condition, and control human behavior, including the behavior of her own children and their father.

Accordingly, her campaign of alienation cannot be dismissed as impulsive or emotional; it constitutes a deliberate and informed exercise in psychological control. Every denial of visitation, every refusal to communicate, and every strategic misdirection reflects an understanding of how repeated emotional deprivation reshapes a child's perception and loyalty. This is not accidental

estrangement, it is psychological warfare, executed by an individual who knows exactly how to break attachment bonds and weaponize them for advantage in court.

Such conduct amplifies the need for judicial intervention. When a litigant with this level of psychological expertise uses that knowledge to violate court orders and inflict emotional injury upon both the children, Appellee ceases to be a private wrongdoer and becomes a systemic threat to the administration of justice itself. Appellee's actions demonstrate calculated intent, not misunderstanding; conscious coercion, not confusion. The resulting harm, both to the children and to the integrity of the court's orders, demands certification of these issues as matters of statewide legal importance rather than mere domestic dispute.

## Procedural Evasion Cannot Override Substantive Violations

The appellate process exists to ensure that *form never triumphs over function*. When the judiciary becomes so preoccupied with procedural purity that it ignores ongoing felonies in the name of "order," justice ceases to function as a shield and becomes a sword wielded by the aggressor. Appellee's reliance on form over substance proves the need for **judicial certification**: this case is not about whether a motion was formatted correctly, but whether the Texas judiciary will continue to enforce unconstitutional and inequitable mechanisms in the face of criminal contempt.

## State Culpability and the Threshold of Criminal Interference

The record establishes Appellees that this case long ago crossed from civil noncompliance into criminal territory. Under **Texas Penal Code § 25.03 (Interference with Child Custody),** each willful denial of court-ordered possession constitutes a separate state jail felony. The decree in this case is valid, unambiguous, and continuously violated. Appellee has admitted, in her own pleadings, that no visitation occurs unless Appellee personally consents, an admission that satisfies every element of § 25.03. The cumulative pattern of more than four hundred denials of possession is not merely contemptuous conduct; it is **an unprosecuted series of felonies.**

Under the **Texas Code of Criminal Procedure, arts. 2.01–2.21**, both peace officers and prosecuting attorneys have a statutory duty to act upon credible evidence of such violations. Yet no investigation, referral, or prosecution has ever been initiated. Instead, the Executive Branch, through the Office of the Attorney General (a law enforcement branch of the Executive Branch), has elected to protect and empower the offender by prosecuting financial enforcement actions on her behalf. This abdication of law-enforcement duty, and the corresponding use of state resources to enrich a criminal actor, renders the State a participant in the continuing harm rather than a guardian against it.

The OAG's conduct moves beyond neglect into **color-of-law complicity**. Once notified of this conduct by the other party, engaged in felony conduct, the agency had an affirmative obligation to withdraw, report, or refer the matter to appropriate authorities. Instead, it advanced the violator's cause and filed federal reimbursement claims for funds the State never expended, all while asserting representation of "the children" it neither legally represents nor serves. This pattern of behavior transforms administrative enforcement into **state-sponsored fraud and selective prosecution**, violating due-process and equal-protection guarantees recognized in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), and constituting an ultra vires act under both federal and state law.

At this juncture, the State's involvement can no longer be viewed as a good-faith error. By maintaining enforcement proceedings in favor of a party engaged in continuous criminal conduct, the OAG has crossed the threshold into **institutional culpability.** The Executive Branch has used the machinery of government to compel payment on an invalid obligation, to the benefit of a known violator, and to the financial enrichment of the State through false federal reimbursement claims. This Court cannot permit such conduct to stand unexamined. Certification of these constitutional and jurisdictional questions to the Texas Supreme Court is therefore essential, not only to determine the limits of Title IV-D authority, but to reaffirm that **no arm of government may profit from or protect ongoing criminal activity under color of law.**

This is precisely why Appellant seeks certification of a new civil tort. If the State elects not to prosecute the disproportionate number of custodial parents—most of whom are women—who commit acts that constitute state jail felonies by

interfering with visitation, then equity and due process demand that non-custodial parents and their children be granted the right to seek redress directly through the Texas courts. Such recognition would restore balance and ensure that the injury inflicted upon the child and the non-custodial parent is no longer shielded by prosecutorial discretion, but addressed as a compensable wrong under Texas law.

# Certification as the Only Mechanism to Restore Balance

The magnitude of the constitutional contradictions here at this point: an Executive Branch collecting money for a criminal violator under the guise of child welfare, while silencing the parent seeking redress, demands resolution from this court or certified on to the highest court of this State. This Court or the Texas Supreme Court must decide whether the law can compel performance under a decree in active breach, and whether procedural defects may be used as a shield for systemic corruption.

Certification is not a request for sympathy; it is a demand for judicial accountability. The appellate record demonstrates a complete miscarriage of justice: a Non-Custodial Parent stripped of access, targeted for collection by an agency without standing, and denied adjudication of his constitutional objections. Only this court or the Texas Supreme Court can define the limits of this abuse of power and restore faith that the **House of Justice** still stands as a refuge for those wronged by bureaucratic overreach and systemic indifference to criminal activity degrading the best interest of the children in order to focus on a unconstitutional scheme to insert itself into the private lives of the citizens of this state.

# Statement of the Case- Background

This appeal arises from the Milam County 20th District Court's dismissal under Texas Family Code §231.016. Appellant challenges the State's jurisdiction and the constitutional validity of Title IV-D enforcement.

Appellant Switkowski has raised a consistent, escalating series of jurisdictional and constitutional challenges from inception to appeal. Each filing added a distinct legal layer the trial court was constitutionally required to address before ruling. The 20th Judicial District Court of Milam County instead issued a blanket dismissal under Tex. Fam. Code § 231.016, without ruling on standing,

13

fraud, or the pending constitutional questions, and then ordered Appellant jailed for six months while the custodial parent (Archbold) continues to commit a **state-jail felony under Tex. Penal Code § 25.03** by withholding visitation.

# Chronological Summary of Preserved Challenges
**Reference to Clerk's Record (Procedural Chronology Source)**

See **Appendix 3** for a complete chronological summary of preserved filings and issues raised below.

# Current Posture

Despite these unresolved constitutional questions, the **Executive Branch continues to act** as though enforcement authority remains intact, collecting funds under Title IV-D for a private litigant engaged in criminal contempt while ignoring the court's failure to adjudicate standing or due process. The judiciary's silence in the face of such conduct leaves Appellant without the protection of law, forcing him to seek sanctuary in the appellate process itself.

This appeal therefore presents a **live, statewide question of law**: whether a Texas court may extinguish preserved constitutional and jurisdictional challenges by blanket dismissal without findings, while the State continues to enforce the same unconstitutional mechanisms against the Non-Custodial Parent at the request of a Custodial Parent currently committing multiple state jail felony every month.

The answer must be **no**. The judiciary cannot abdicate review of a live constitutional controversy through silence. Until the Texas Supreme Court has certified and ruled on these questions, all enforcement actions derived from this defective process remain **void ab initio** for want of standing, jurisdiction, and equity.

# Statement of Issues Presented

1. **Non-compliant and frivolous** (Rule 13 & Low v. Henry)

2. **Procedurally defective** (Rule 21a, 33.1(a))

3. **Waived constitutional issues** (TRAP 33.1, 38.1(i))

4. **Outside scope of enforcement** (arguing you raised collateral issues)

5. **Factually in arrears** ($23,000 claim; no dispute)

6. **Misrepresenting the decree** (visitation by mutual agreement only)

7. **Pattern of coercive conduct** (citing "CPS testimony" and "coercive control")

8. **Trial court acted within discretion** (abuse-of-discretion standard)

9. **Appellate brief inadequate** (TRAP 38.1(i))

10. **Seeks deterrence / sanctions** (Rule 13 and Chambers v.  O'Quinn)

# Appellee's Arguments and Appellant's Legal Response

# Response to Appellee's Issue No.  1: "Non-Compliant and Frivolous" — Rule 13 / *Low v.  Henry*

Appellee's reliance on **Texas Rule of Civil Procedure 13** is misplaced. Rule 13 sanctions apply only when a pleading is both (1) groundless and (2) filed in bad faith or for the purpose of harassment.  The rule further requires that the trial court conduct an **evidentiary hearing** and make **explicit findings of bad faith** before imposing sanctions.  *Low v.  Henry*, 221 S.W.3d 609, 614–17 (Tex.  2007). No such hearing or findings occurred in this case.  Without them, any allegation of frivolity or bad faith is void as a matter of law.

Each of Appellant's filings below, including the **Motion to Dismiss for Gross Material Breach of Contract**, **Motion to Compel Discovery and for Sanctions**, and **Motion for Order to Show Cause for Contempt**, was brought in good faith to address unresolved constitutional and jurisdictional defects.  These pleadings challenged the **standing of the Office of the Attorney General under Title IV-D**, ongoing **due-process violations**, and the question of **continuing post-divorce jurisdiction**, issues of first impression and statewide significance.  Efforts to clarify unsettled constitutional law cannot, by definition, constitute bad faith or harassment.
Accordingly:

1. No evidentiary hearing or findings of bad faith were held as required by Rule 13;
2. Each filing presented legitimate constitutional questions preserved for appellate review; and

3. Under *Low v. Henry*, litigants who raise novel legal issues in good faith are protected from sanctions.

Appellee's attempt to characterize these filings as "frivolous" is an improper use of Rule 13 as a retaliatory weapon rather than a safeguard against abuse. Her argument fails as a matter of both law and record.

# Response to Appellee's Issue No. 2: "Procedurally Defective" — Rule 21a / TRAP 33.1(a)

Appellee's assertion that Appellant's filings were procedurally defective under **Texas Rule of Civil Procedure 21a** and **Texas Rule of Appellate Procedure 33.1(a)** is unsupported by the record and contrary to law. Rule 21a(b)(3) expressly authorizes service by the clerk's electronic-filing system or by certified United States mail sent to the party's last known address. Appellant complied with both methods. Multiple USPS tracking confirmations and return-receipt images show timely attempts at delivery, with written notices left at Appellee's address of record. Appellee, however, **failed or refused to retrieve the mailings**, as evidenced by the returned envelopes reproduced in **Appendix 2 (Proof of Attempted Service and Return Receipts)**.

Texas courts have long held that **a party cannot defeat valid service by evading receipt of certified mail.** *Gonzalez v. Surplus Ins. Servs.*, 863 S.W.2d 96, 102 (Tex. App.—Beaumont 1993, writ denied). A litigant who intentionally avoids notice waives any objection to service. Moreover, Appellee filed written responses to the very motions Appellee claims never to have received, an implicit **admission of actual notice.** If those documents were obtained through the **Office of the Attorney General**, as the timing and content suggest, that exchange demonstrates coordination between the OAG and Appellee in circumventing formal service while denying receipt in the record.

Even assuming a technical irregularity in a certificate of service, **actual notice satisfies due process** and renders any error **harmless** under **TRCP 44.1(a)**. *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005). Texas appellate courts further direct that **pro se filings be construed liberally** so that meritorious constitutional claims are not lost to curable formatting errors. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *In re Baby Boy R.*, 191 S.W.3d 916, 921 (Tex. App.—Dallas 2006, pet. denied).

Appellee's own pleadings conclusively establish that Appellee received the filings in question. Her written responses directly reference the contents, dates, and subject matter of the very motions Appellee now claims were never served.

16

Under well-settled Texas law, a party's **responsive pleading or argument referencing a document constitutes judicial admission of receipt and knowledge** of that filing. See *In re Estate of Aguilar*, 492 S.W.3d 807, 814 (Tex. App.—San Antonio 2016, pet. denied). By engaging the merits of those motions and addressing their arguments line-by-line, Appellee demonstrated actual notice far beyond any constructive presumption. Her responses cannot exist without prior access to the filings; therefore, her own record activity operates as an admission that service occurred.

Accordingly:

1. Service was properly attempted and documented under Rule 21a(b)(3);
2. Appellee's deliberate refusal to accept certified mail constitutes waiver of any objection to notice;
3. Her subsequent responsive pleadings confirm **actual notice**, curing any alleged defect; and
4. Any minor technical error is harmless under *Mathis* and Rule 44.1(a).

Appellee's "procedurally defective" argument therefore fails as a matter of law and fact. Her conduct reflects not lack of notice, but a calculated attempt to manufacture procedural error where none exists.

# Response to Appellee's Issue No. 3: "Waived Constitutional Issues" — TRAP 33.1 & 38.1

Appellee's assertion that Appellant "waived" constitutional challenges under **Texas Rules of Appellate Procedure 33.1** and **38.1** is directly contradicted by the record. Constitutional objections were raised repeatedly, both in writing and orally, and formally placed before the trial court at the **May 19, 2025 hearing**. The presiding judge expressly ruled that those issues were "outside the scope" of the proceeding. That statement constitutes a ruling on the record, thereby **preserving the constitutional issues for appellate review.** See *Hernandez v. Ebrom*, 289 S.W.3d 316, 319 (Tex. 2009) (holding that once a trial court acknowledges and refuses to reach a constitutional argument, error is preserved).

Texas law requires only that (1) a complaint be made to the trial court with sufficient specificity, and (2) the court rule on or refuse to rule on the request. **TRAP 33.1(a)** does not require a favorable ruling to preserve error; it requires only that the issue be raised and that a ruling, favorable or not, appear in the record. Both conditions were met here. Appellant's constitutional objections were presented, recorded, and rejected as "outside the scope," satisfying preservation requirements in full for proper appellate review.

Appellee's reliance on **TRAP 38.1(i)** is equally misplaced. The **Opening Brief** and accompanying **Notice of Constitutional Challenge** filed pursuant to **Texas Government Code § 402.010(a-1)** contain detailed constitutional analysis supported by citations to *Bruen v. New York State Rifle & Pistol Ass'n*, *Loving v. Virginia*, and *Yick Wo v. Hopkins*. The record therefore contains both the **factual basis and legal authority** required to preserve and brief each constitutional issue in compliance with TRAP 38.1(i).
Accordingly:

1. The constitutional issues were timely raised and expressly ruled "outside the scope," satisfying TRAP 33.1(a);
2. A ruling adverse to the movant is still a ruling for preservation purposes (*Hernandez v. Ebrom*); and
3. Detailed constitutional argument and authority were presented in the record, satisfying TRAP 38.1(i).

Appellee's waiver argument fails as a matter of law. The constitutional issues are properly before this Court and must be adjudicated or certified to the Texas Supreme Court under **TRAP 57.2**.

# Response to Appellee's Issue No. 4: "Outside Scope of Enforcement" — Collateral Issues Claim

Appellee's assertion that Appellant's constitutional and jurisdictional challenges were "outside the scope of enforcement" is legally untenable. The **threshold question of standing and jurisdiction** is never collateral; it is a **prerequisite to enforcement.** In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998), the United States Supreme Court made clear that a court must first establish Article III standing and subject-matter jurisdiction before addressing the merits of any claim. Without such standing, all subsequent actions are void ab initio.

Here, the **Office of the Attorney General (OAG)** asserted enforcement authority under **Title IV-D** without ever demonstrating expenditure of public assistance funds or assignment of rights, as required by **Texas Family Code §§ 231.101–104.** Appellant's motion to dismiss for gross material breach of contract therefore properly raised a **jurisdictional defect and constitutional challenge** that precedes enforcement. The trial court's refusal to address that challenge, labeling it "outside the scope," constituted reversible error under *Steel Co.* and violated Appellant's right to due process under both the Texas and United States Constitutions.

18

Additionally, Appellant's claims regarding **Appellee's material breach of the decree** through continuous denial of visitation are not collateral; they go directly to the **equity and enforceability** of support obligations. A party who has nullified one side of a reciprocal obligation cannot invoke the court's enforcement powers to compel performance of the other. Texas law requires that equity be mutual and that enforcement proceed only where both parties are in substantial compliance.
Accordingly:

1. **Standing and jurisdiction challenges** are structural questions that precede enforcement and cannot be dismissed as collateral;
2. The **Texas Family Code** imposes no bar to raising jurisdictional or constitutional objections within enforcement proceedings; and
3. The trial court **abused its discretion** by enforcing a decree without first requiring the OAG to establish standing or statutory authority.

Appellee's "outside the scope" argument therefore fails as a matter of both law and logic. This Court should find that the trial court erred in refusing to adjudicate jurisdictional and standing defects prior to enforcement and should **certify those questions to the Texas Supreme Court** for resolution under **TRAP 57.2.**

# Response to Appellee's Issue No. 5: "Factually in Arrears ($23,000 Claim)"

## The Appellee's Arrears Claim Is Barred by Her Own Misconduct and Subject to Equitable Offset

Appellee's assertion that Appellant is "factually in arrears" in the amount of approximately $23,000 is **moot in light of the unconstitutional actions of the Office of the Attorney General and the felonious conduct of Appellee herself.** The validity of any claimed arrearage cannot be adjudicated or enforced until the underlying constitutional defects and ongoing violations of law have been resolved. Enforcement has now become a **secondary issue**, eclipsed by the far greater questions of due process, standing, and criminal interference.

Moreover, a new **expense-based child-support model**, which must be **certified by the judiciary as constitutionally compliant** and aligned with public policy promoting the *best interest of the child's reasonable and necessary expenses*, is required to replace the outdated income-based formula that promotes

**unjust enrichment** and systemic inequity. Texas law recognizes that **unjust enrichment** occurs when one party wrongfully secures or passively receives a benefit that, in equity and good conscience, belongs to another. *See* **Heldenfels Bros., Inc. v. City of Corpus Christi**, 832 S.W.2d 39, 41 (Tex. 1992); *see also* **Tex. Civ. Prac. & Rem. Code § 134.002(2)** (defining unlawful benefit as enrichment derived through wrongful act). The continued use of an income-based system that disproportionately burdens the Non-Custodial Parent, predominantly fathers, constitutes an ongoing act of **state-sanctioned unjust enrichment** and violates the equal-protection principles embodied in **Tex. Const. art. I, §§ 3 and 19**. Under this evolving standard, any monetary claim by Appellee must be evaluated not through a defunct income-ratio formula but through a **civil tort for Loss of Parent–Child Consortium**, as outlined in **Appendix 1**. Until that tort is formally recognized and adjudicated, all existing arrearage claims remain **constitutionally and equitably premature**.

The distinction between **obligation and debt**, how it is actually classified and collected has been fully developed in Appellant's Opening Brief, is referenced here only to maintain continuity of analysis. Its mention in this Reply Brief serves solely to link that foundational argument to the present discussion of equitable enforcement and unjust enrichment, ensuring the record reflects the consistent constitutional theory advanced throughout the appeal.

Until the Parent/ Child Consortium tort is formally certified and adjudicated, no meaningful or lawful accounting of financial responsibility can occur. Thus, Appellee's arrears claim is not merely unsupported by evidence, it is **constitutionally and equitably premature.**

Even if the arrearage figure were accepted as accurate, it represents a trivial fraction of the estimated [**$981,600 – $1,831,200**] in quantifiable damages arising from Appellee's deprivation of Parent/ Child Consortium, as demonstrated in **Appendix A.** Under standard civil-accounting principles, competing obligations between the same parties are reconciled through **offset and renouncement**, ensuring that one party's recovery is reduced or extinguished by the other's verified counter-claim. Until Appellee's liability for the loss of consortium is adjudicated, any enforcement of her arrears claim would be premature, inequitable, and constitutionally infirm.

By invoking the court's aid while continuing to violate its orders, Appellee seeks to profit from her own wrongdoing. Equity and due process prohibit the Executive or Judicial Branch from enforcing financial claims in favor of a party whose **hands remain unclean.** The proper remedy is to stay enforcement and certify all competing monetary issues for comprehensive accounting and offset once the pending constitutional and tort matters are resolved.

# Response to Appellee's Issue No. 6: "Misrepresenting the Decree" — Visitation by Mutual Agreement

Appellee misrepresents the decree's "mutual agreement" clause as granting her unilateral authority to control all visitation. The plain language of the decree, read in context and under **Texas Family Code § 156.101(a)(1),** provides for **shared discretion** between the parties, not absolute de-facto veto power by one parent over another. The purpose of the "mutual agreement" clause was to accommodate "**reasonable flexibility for the children's school schedules and extracurricular activities**," recognizing that multiple children enrolled in different programs may require occasional adjustment of visitation times. The intent was to promote cooperation and stability for the children, not to empower one parent to terminate the other's access altogether AT WILL.

Appellee's admitted refusal to permit any visitation unless Appellee personally consents converts a cooperative provision into a mechanism of **constructive interference**, amounting to a **material breach** of the decree. Denying all standard Texas visitation access under the guise of "mutual agreement" effectively nullifies the **Standard Possession Order** by Texas law and violates public policy favoring frequent and continuing contact between children and both parents.

Appellant's **Motion to Dismiss for Gross Material Breach of Contract** directly addressed this live controversy by asserting that Appellee's ongoing violations has extinguished Appellants mutuality of obligation under the decree. The trial court's decision to ignore that motion, labeling it "outside the scope," was legal error. Texas law recognizes that **material breach of a court-approved contract** operates as a complete defense to enforcement of related duties, including financial obligations. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Accordingly:

1. The "mutual agreement" clause was intended to facilitate coordination, not unilateral denial;
2. Appellee's refusal of all access constitutes **constructive interference** and **material breach** under Tex. Fam. Code § 156.101(a)(1); and
3. The trial court erred in disregarding Appellant's **Motion to Dismiss for Material Breach**, which presented a live, justiciable controversy affecting enforceability.

Appellee cannot nullify visitation by invoking cooperation language as a weapon of control. Appellee misuse of the decree's terms destroys the reciprocal

foundation of the order and bars her from seeking enforcement of its financial provisions until full compliance and restoration of access are achieved.

**"At no point is any of this in the best interest of the children!"**

# Response to Appellee's Issue No. 7: "Pattern of Coercive Conduct / CPS Testimony"

Appellee's attempt to introduce allegations of a so-called "pattern of coercive conduct" through **CPS testimony, text screenshots, and social-media posts** is procedurally improper and legally inadmissible. The supplemental materials Appellee references were **never authenticated, never admitted into evidence, and never subjected to cross-examination.** They therefore hold **no evidentiary value** on appeal and cannot be considered by this Court.

Under **Texas Rules of Evidence 802 and 901**, hearsay evidence and unauthenticated documents are inadmissible unless properly verified by a sponsoring witness with personal knowledge. None of the exhibits in Appellee's supplemental record meet those standards. The alleged CPS notes are unsworn, unsigned, and not certified by any agency custodian as required in Texas Rules of Evidence; the text screenshots and social-media excerpts lack metadata or chain-of-custody authentication. As such, they are **inadmissible hearsay** and **cannot form the basis for any factual finding or appellate argument.**

Even if such materials had been admitted, their inclusion is irrelevant to the issues on appeal. None of the purported statements or posts relate to arrears, standing, or the enforceability of the decree. Instead, they constitute **character smears** intended to inflame rather than inform. Introducing such inflammatory and unverified materials violates **Rule of Evidence 403**, which prohibits evidence offered for unfair prejudice or to mislead the trier of fact.

Texas appellate courts have consistently held that items **outside the record or not formally admitted into evidence must be disregarded.** *See* **TRAP 34.6** (limiting review to the clerk's and reporter's record). Accordingly, these exhibits should be **struck or ignored** in their entirety. Appellee's reliance on unverified, mischaracterized and irrelevant accusations reveals an improper motive, **to malign Appellant's character rather than to address the actual legal issues before this Court.**

Accordingly:
1. The materials cited by Appellee are **unauthenticated hearsay** under TRE 802 and 901;
2. None were admitted into the record or verified by any sponsoring witness;

3. Their inclusion is irrelevant and prejudicial under TRE 403; and
4. They must be **disregarded under TRAP 34.6** as matters outside the appellate record.

Appellee's use of inadmissible and inflammatory material underscores her pattern of manipulation and bad faith. This Court should strike or disregard these references and confine its review to the properly admitted evidence in the official record.

Given Appellee's **advanced education in organizational and behavioral psychology** and her demonstrated ability to influence the perceptions of the minor children, any attempt to elicit an emotional response from this Court should be viewed through a **subjective and critical evidentiary lens** rather than accepted at face value. Courts are cautioned to separate **emotionally charged allegations from verified fact**, particularly where a party possesses specialized training in persuasion or conditioning. Appellee's educational background heightens her responsibility to avoid manipulative advocacy; therefore, this Court should evaluate all such assertions with heightened scrutiny and limit its consideration to **objective, authenticated evidence contained in the record.**

# Response to Appellee's Issue No. 8: "Trial Court Acted Within Its Discretion" — Abuse-of-Discretion Review

Appellee's claim that the trial court "acted within its discretion" misconstrues both the scope and limits of judicial discretion. **Discretion ends where due process begins.** A trial court's decisions are reviewable for abuse of discretion when they (1) are made without reference to guiding legal principles, (2) rest on legally or factually insufficient evidence, or (3) disregard constitutional protections. *Iliff v. Iliff*, 339 S.W.3d 74, 78–79 (Tex. 2011). Each of those errors occurred here.

The court **abused its discretion** by:
1. **Proceeding without first establishing standing or addressing a multitude of pre-hearing objections**—allowing enforcement to continue in the absence of verified legal authority;
2. **Imposing a punitive purge condition** of $50 per day unrelated to Appellant's proven ability to pay, violating *Ex parte Chambers*, 898 S.W.2d 257 (Tex. 1995); and
3. **Refusing to consider Appellant's constitutional objections**, despite being duly noticed and preserved on the record.

Any one of these errors would constitute abuse of discretion; together, they render the enforcement order void. In *Iliff*, the Texas Supreme Court held that an enforcement judgment unsupported by competent evidence is an abuse of discretion subject to reversal. The same principle applies here: **discretion cannot substitute for evidence, fairness, or constitutional compliance or a constitutional challenge.**

The hearing record reveals arbitrary enforcement and unequal treatment, favoring Appellee, who remains in ongoing contempt, while punishing Appellant for raising legitimate constitutional defenses in order to make sure that he can see his kids and making sure they are being properly cared for with the money he is paying. A court that ignores due process and relies on unsworn assertions ceases to exercise discretion and instead engages in **judicial arbitrariness**, which is reversible error.

Accordingly:

1. Abuse-of-discretion review still requires a lawful evidentiary foundation;
2. The trial court acted without competent evidence or guiding principles; and
3. The resulting order is void under *Iliff* and *Ex parte Chambers*.

The judgment below should therefore be **reversed and remanded** for findings consistent with constitutional due process and verified evidence.

# Response to Appellee's Issue No. 9: "Appellate Brief Inadequate" — TRAP 38.1(i)

Appellee's claim that Appellant's opening brief fails to comply with **Texas Rule of Appellate Procedure 38.1(i)** is factually and legally unfounded. The **Opening Brief** contains detailed legal argument supported by citations to the record, relevant statutes, and controlling precedent, including *Bruen v. New York State Rifle & Pistol Ass'n*, *Loving v. Virginia*, and *Yick Wo v. Hopkins*. The brief also identifies specific provisions of the **Texas Family Code** and includes multiple appendices with referenced exhibits, clearly satisfying the requirements of TRAP 38.1(i).

Dismissal for "inadequate briefing" is strongly disfavored where the appellate court can discern the substance of the appellant's arguments. *Sterner v. Marriott Int'l, Inc.*, 390 S.W.3d 599, 603 (Tex. App.—Dallas 2012, no pet.). Texas courts consistently hold that **substance prevails over technical form**, particularly when the issues presented are constitutional in nature and fully developed through citations to law and the record.

Moreover, while pro se appellants must comply with the rules of appellate procedure, the courts are required to **liberally construe pro se filings to reach the merits** where the essential arguments are clear. *Hernandez v. Gallardo*, No. 03-18-00421-CV, 2019 WL 2052115, at *2 (Tex. App.—Austin May 9, 2019, no pet.) (mem. op.). Appellant's filings more than satisfy that standard: the record citations are precise, the legal issues are thoroughly developed, and the constitutional questions are preserved and properly before this Court.

Appellee's accusation of inadequate briefing is therefore not a genuine procedural objection but a rhetorical device to obscure the deficiencies in her own brief. By misquoting and misapplying TRAP 38.1, Appellee seeks to distract from her failure to address the substantive constitutional and jurisdictional questions central to this appeal.

Accordingly:

1. The **Opening Brief** fully complies with TRAP 38.1(i) by providing detailed argument, authorities, and record references;
2. *Sterner v. Marriott* forbids dismissal where the substance of the appeal is clear; and
3. Under *Hernandez v. Gallardo*, pro se filings are entitled to liberal construction to ensure review on the merits.

This Court should reject Appellee's procedural smokescreen and proceed to adjudicate the appeal on the constitutional and factual merits, as the rules and the interests of justice require.

## Response to Appellee's Issue No. 10: "Seeks Deterrence / Sanctions" — Rule 13 & *Chambers v. O'Quinn*

Appellee's demand for sanctions under **Texas Rule of Civil Procedure 13** and *Chambers v. O'Quinn*, 242 S.W.3d 30 (Tex. 2007), is procedurally and legally baseless. Rule 13 sanctions cannot substitute for appellate adjudication or be imposed in the absence of **explicit findings of bad faith** and **advance notice of a sanctions hearing.** *Chambers* squarely holds that sanctions must rest on specific, written findings supported by evidence of improper motive. None exist in this record.

Every pleading filed by Appellant, including the *Motion to Dismiss for Gross Material Breach of Contract*, *Motion to Compel Discovery and for Sanctions*, and *Notice of Constitutional Challenge*, was filed in good faith and supported by statute, record evidence, and precedent. These filings sought

25

resolution of unsettled constitutional questions, not harassment or delay. The trial court conducted no Rule 13 hearing, entered no findings of bad faith, and issued no notice of intent to impose sanctions. Appellee's request for deterrence therefore lacks both factual and procedural foundation.

Appellee's invocation of "deterrence" reveals a retaliatory motive: to **silence constitutional challenge** and chill protected petitioning activity. Using the threat of sanctions to suppress legitimate legal argument violates the **Open Courts Clause** of the **Texas Constitution, Article I, § 13**, which guarantees every citizen the right to seek judicial redress for grievances. Sanctions imposed without findings and due process are themselves an abuse of discretion and a denial of fundamental fairness.

The appellate court's role is to **resolve questions of law**, not to punish their presentation. Where, as here, the record contains no hearing, no notice, and no findings, there exists **no legal predicate for sanctions** under Rule 13 or *Chambers*. Any request for deterrence should therefore be denied, and this Court should reaffirm that constitutional litigation is not grounds for punishment, but a protected exercise of the right to seek justice.

Accordingly:
1. No findings of bad faith or notice were made as required by *Chambers v. O'Quinn*;
2. Rule 13 cannot be used as a substitute for appellate adjudication;
3. Invoking deterrence to suppress constitutional argument violates Tex. Const. art. I, § 13; and
4. The appellate court's duty is to resolve the legal issues, not penalize their assertion.

For these reasons, Appellee's request for sanctions should be summarily rejected, and this Court should proceed to address the preserved constitutional and jurisdictional questions on their merits.

# Argument

For over four years, Appellant has endured a relentless cycle of procedural evasion, psychological manipulation, and inequitable enforcement. What began as a family matter governed by a mutual cooperation clause has devolved into an unbroken pattern of obstruction, contempt, and constitutional violation. Appellee, an individual with advanced training in organizational psychology, has used that expertise not to promote the children's stability, but to engineer their alienation and to weaponize the legal system against their father. Her filings are not efforts to

seek justice; they are instruments of control designed to exploit procedural form while evading substantive accountability.

Throughout this ordeal, Appellant has been denied both access to his children and the protection of due process.  The trial court dismissed every pending motion, his, hers, and the State's, without findings, conclusions, or acknowledgment of the constitutional questions preserved on record.  Such judicial silence has left Appellant trapped between two extremes: a Custodial Parent who refuses to comply with court orders and an Executive Branch that continues to enforce an unconstitutional financial scheme.

The evidence shows a complete breakdown of mutuality and equity.  No consistent visitation schedule has ever been established by Appellee since April 2021.  No hearing was held to determine standing, ability to pay, or the effect of Appellee's admitted violations.  In place of law, Appellant has faced bureaucracy; in place of justice through the retaliation of incarceration.  The result is not merely a personal hardship; it is a systemic failure that threatens the integrity of family-law enforcement statewide.

This appeal is therefore not about relitigating parenthood or emotion.  It is about the rule of law: whether Texas courts will allow enforcement by those who act in contempt of their own decrees, and whether constitutional objections or outright challenges may be silenced through procedural avoidance.  Four years of litigation without access to justice is not discretion, it is deprivation.  The record and the law demand correction.

# Certificate of Compliance (TRAP 9.4(i)(3))

I certify that this document contains approximately [7,375] 14-point Times New Romans Font words (excluding the caption, table of contents, index of authorities, certificate of service, and this certificate).   Every section not included in this list was copy/ pasted into a word document and counted in order to get the number above.  [See: Appellant's Motion for Leave to File Reply Brief Out of Time]

# Conclusion and Prayer for Relief

For the reasons stated, this appeal presents structural defects that must be resolved before any further enforcement may proceed.  Standing cannot be presumed, due process cannot be bypassed, and equity cannot be invoked by a party in continuing material breach.  An Executive-branch collection action has

been pursued without a verified legal basis while more than four hundred violations of court-ordered standard possession went unaddressed. Form cannot defeat function, and procedure cannot eclipse the Constitution.

## PRAYER

Appellant respectfully prays that this Court:

1. **Reverse** the dismissal under Texas Family Code § 231.016 and **vacate** all enforcement and contempt orders entered without first adjudicating standing and the preserved constitutional objections.

2. **Stay all enforcement** (including contempt, license suspensions, credit reporting, IWO/withholding, intercepts, and collections) **pending resolution** of jurisdictional and constitutional questions.

3. **Certify to the Texas Supreme Court (TRAP 57.2)** all the constitutional challenges identified in Appellants brief.

4. **Hold that sanctions/deterrence are improper** absent notice, an evidentiary hearing, and specific written findings of bad faith under Rule 13 and *Chambers v. O'Quinn*; **deny** Appellee's sanctions request.

5. **Reject "procedural defect" arguments** where actual notice occurred and any technical error was harmless; **affirm** that deliberate evasion of certified mail waives service objections and that pro se filings are liberally construed to reach the merits.

6. **Strike or disregard** all unauthenticated, extra-record materials and hearsay (including CPS notes, screenshots, and social-media exhibits) under TRE 802/901, TRE 403, and TRAP 34.6.

7. **Vacate purge conditions** and any contempt findings not supported by competent evidence of ability to pay or that conflict with *Ex parte Chambers*.

8. **Declare ultra vires** any OAG enforcement undertaken without statutory standing or proof of public-fund expenditure/assignment; **remand with instructions** that the OAG must first prove standing or withdraw.

28

9. **Recognize material breach as a complete equitable defense** to financial enforcement (e.g., *Dobbins v. Redden*; *Glass v. Anderson*), and **require findings** on Appellee's interference with possession and the mutuality of obligations before any enforcement may resume. The party must have clean hands before coming to court to seek redress and actively withholding the children in violation of both state penal code and civil contempt bars further action until such time as that default has been remedied the court cannot move forward.

10. **Order an evidentiary hearing on interference with possession** (Tex. Penal Code § 25.03) with specific **Findings of Fact and Conclusions of Law** on (i) frequency and willfulness, (ii) effect on equity, and (iii) remedies to restore access.

11. **Direct immediate temporary relief to restore possession/access**, including temporary orders establishing a Standard Possession Order schedule and make-up visitation, to prevent ongoing irreparable harm to the parent-child relationship.

12. **Allow Appellant and Appellee to take leave in order to test the veracity of the new civil Parent/ child Loss of Consortium tort settling any arrearage claims in abeyance**, requiring a **comprehensive accounting** subject to **equitable offset** for Appellant's counterclaims/defenses after constitutional and standing issues are resolved and a new civil tort has been created as its first case.

13. **Acknowledge that Blessing v. Freestone** confirms no fiduciary duty to parents/children; **forbid characterizing the OAG as GAL/trustee/representative** to justify enforcement in this matter.

14. **Recognize or, alternatively, certify for consideration the new, historically first Expense-Based Child Support Program** as a constitutionally compliant alternative to the current income-based enforcement model, ensuring that future determinations align with actual verified child expenses, fiduciary accountability, and equal protection under law.

15. **Issue instructions to the clerk**: upon issuance of this Court's judgment or certification order, **promptly notify the Texas Attorney General** under Tex. Gov't Code § 402.010(a-1) of this ruling and **transmit the certified questions and relevant record excerpts** to the Texas Supreme Court.

16. **Issue instructions to all trial courts on remand where the OAG is involved:**

   **Part A – Office of the Attorney General (OAG):**
   The trial court shall:
   (i) set a prompt evidentiary hearing to determine whether the OAG has in fact expended public funds or obtained a lawful assignment of rights or custody;
   (ii) require live testimony under oath and cross-examination from both the OAG and any designated caseworker to establish statutory compliance with Tex. Fam. Code §§ 231.101–104;
   (iii) enter written Findings of Fact and Conclusions of Law under Rules 296–299a detailing the evidence relied upon;
   (iv) treat OAG standing as a threshold issue that must be resolved before any enforcement or collection activity may proceed; and
   (v) bar reinstatement of enforcement mechanisms, including contempt, license suspension, or wage withholding, unless and until those findings affirm lawful jurisdiction, verified standing, and equitable compliance.

   **Part B – Custodial Parent (CP):**
   The trial court shall:
   (i) require the Custodial Parent to produce verified evidence that all court-ordered visitation, communication, and access have been honored and are current;
   (ii) enter written findings confirming full compliance with the Standard Possession Order or any modified order of the court;
   (iii) treat ongoing or willful interference with possession as a material breach barring any enforcement of reciprocal financial obligations until cured; and
   (iv) affirm that child-support enforcement and visitation enforcement are inseparable components of a single judicial duty, each must support the other, as both serve the child's best interest.

All parties must enter the House of Justice with clean hands, or not enter at all.

17. **This case presents a historically significant constitutional challenge**: one that questions the lawful boundaries of state authority within domestic relations and the proper separation of powers under both the Texas and United States Constitutions. It implicates issues that reach beyond the immediate parties, touching on centuries-old principles of liberty, due process, and the limitation of government power first articulated in our founding jurisprudence. Should this Honorable Court determine that any issue raised herein requires further clarification, or that oral argument would assist in resolving the constitutional questions presented, Appellant stands fully prepared to provide such clarification or appear for oral argument at the Court's discretionary convenience.

**Appellant therefore respectfully requests that this Court vacate the dismissal, certify the constitutional questions, and stay enforcement pending full judicial review, letting justice be done, though the heavens fall.**

**Respectfully submitted,**

*Neil Switkowski*  10/20/2025

**Neil George Switkowski**
Appellant Pro Se
2203 Post Oak Rd
Rockdale, Texas 76567
E-mail: ns512atx@gmail.com
Date: October 20, 2025

# Certificate of Service

I certify that on October 20, 2025, a true and correct copy of this Motion was served by electronic service through the Court's e-filing system.

*Neil Switkowski*

Neil George Switkowski


**Mr. Deterrean Gamble**
**Assistant Attorney General**
**Child Support Division**
**P. O. Box 12017, Capitol Station**
**Austin, TX 78711-2017**
**\* DELIVERED VIA E-MAIL \***

**Ms. Courtney Sinclair Archbold**
**227 E Bell Ave.**
**Rockdale, TX 76567**
**\* DELIVERED VIA E-MAIL \***

# Appendix 1: Calculation of Denied Visitation under the Texas Standard Possession Order

## I. Applicable Law

Under **Texas Family Code §§ 153.312 – 153.317**, a Non-Custodial Parent (NCP) residing within 100 miles of the child is entitled to the **Standard Possession Order (SPO)**, consisting of:

1. **First, Third, and Fifth Weekends** each month (Friday 6 p.m. – Sunday 6 p.m.)

2. **Thursday Evenings** each week (6 p.m. – 8 p.m.)

3. **Thirty (30) Days Summer Possession** each year

4. **Alternating Holidays** (Spring Break, Thanksgiving, and Christmas periods)

The combined statutory minimum averages ≈ **90 days of possession per year**.

If the **Expanded SPO** (overnight Thursdays + extended weekends) applies, the total increases to ≈ **168 days per year (≈ 46% time share)**.

## II. Time Frame Measured

**April 1, 2021 – October 19, 2025** = approximately **4 years and 6½ months** = **4.54 years total**.

## III. Quantitative Analysis

| Scenario | Annual Days Entitled Under SPO | Years Covered | Total Days Denied | Equivalent Weeks | Approx. Incidents of Interference [1] |
|---|---|---|---|---|---|
| **Standard SPO** | 90 days / yr | 4.54 yrs | ≈ **409 days** | ≈ 58.4 weeks | ≈ 400 violations |
| **Expanded SPO** | 168 days / yr | 4.54 yrs | ≈ **763 days** | ≈ 109 weeks | ≈ 700 violations |

# Quantification of Loss of Consortium

## A. Conversion of Missed Possession into Measurable Harm

Each missed day of court-ordered visitation represents **24 hours** of lost parental consortium. Consistent with established tort-valuation methods used in wrongful-death and personal-injury cases (where consortium and companionship are valued as non-economic damages), Appellant assigns a conservative valuation of **$100 per hour** for each hour of denied parent-child access.

## B. Calculations

| Scenario | Days of Possession Denied | Hours Denied (× 24 hrs/day) | Value per Hour | Total Loss ($) |
|---|---|---|---|---|
| Standard SPO | 409 days | 9,816 hours | $100 /hr | **$981,600** |
| Expanded SPO | 763 days | 18,312 hours | $100 /hr | **$1,831,200** |

## C. Conceptual Basis for Tort Recognition

1. **Analogous Precedent:**
   Texas courts already recognize **loss of consortium** in spousal and parent–child wrongful-death contexts (*Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990)). The harm here is identical in nature, permanent deprivation of companionship and emotional bond, yet without any civil remedy when caused by willful interference rather than death or physical injury.

2. **Deterrence and Equity:**
   The absence of a civil cause of action incentivizes custodial parents to ignore visitation orders with impunity. Recognition of a **civil tort for interference-based loss of consortium** would align civil and criminal

accountability, providing restitution where the State refuses to enforce its own penal statutes.

3. **Constitutional Mandate:**
Denying a parent any remedy for this class of injury violates **Article I, § 13 of the Texas Constitution ("open courts" provision)** and the **Fourteenth Amendment's Due Process Clause**, both guaranteeing access to a forum for redress of recognized injuries.

# D. Summary of Aggregate Harm

Between April 2021 and October 2025, Appellant has been deprived of approximately:

- **9,816 to 18,312 hours** of parent-child interaction;

- Representing an **economic equivalent of $981,600 to $1,831,200** in irreplaceable time lost;

- Alongside immeasurable emotional and developmental harm to the children themselves.

This quantification is not a request for monetary enrichment but a necessary metric to demonstrate the **severity and measurable magnitude** of the deprivation and to justify judicial recognition of **Loss of Consortium (Parent–Child)** as a **new civil tort** under Texas common law.

# Extension of the Tort to Minor Children

## A. Legal Foundation

Texas precedent already recognizes a child's right to recover for loss of parental consortium. In *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990), the Supreme Court of Texas held that a minor child may recover damages for the loss of a parent's love, affection, protection, emotional support, and companionship when that relationship is impaired by the wrongful act of another.
The Court's reasoning rested on two pillars:

1. **The relationship itself is a protected interest** deserving of civil redress; and

2. **The injury to the child is distinct and personal**, not merely derivative of the parent's claim.

The same principle applies where a custodial parent, acting intentionally and with full knowledge of the harm, **destroys the child's relationship with the other parent** by systematically violating court-ordered possession. The injury to the child's emotional and developmental well-being is no less real than if the parent had been killed or incapacitated.

## B. Children as Independent Plaintiffs

1. Each affected minor child should hold an independent cause of action for **Loss of Parental Consortium Due to Intentional Interference**, permitting the child to recover damages for:

    o Loss of affection, guidance, and nurturing;

    o Emotional distress resulting from the severed relationship; and

    o Long-term developmental harm traceable to the custodial parent's misconduct.

2. The cause of action would parallel existing consortium doctrines, with the custodial parent's interference serving as the actionable "wrongful act."

3. Damages would be measured by the **same hourly valuation** of denied companionship used for the parent's claim, multiplied by the number of affected children.

## C. Calculation of Aggregate Child Loss

| Scenario | Hours Denied (Apr 2021 – Oct 2025) | Value / Hour ($100) | Loss per Child | If Two Children → Aggregate Loss |
|---|---|---|---|---|
| Standard SPO | 9,816 hrs | $100 | $981,600 | $1,963,200 |
| Expanded SPO | 18,312 hrs | $100 | $1,831,200 | $3,662,400 |

# Accounting, Offset, and the Doctrine of Unclean Hands

Appellee now claims a right to collect approximately $23,000 in alleged child-support arrears. Appellant does not dispute that such a figure appears on the State's accounting ledger; rather, he submits that the court cannot enforce that balance **without first reconciling the vastly greater compensatory exposure Appellee faces** for her sustained, willful interference with court-ordered possession. Under ordinary civil-accounting principles, where two parties hold competing claims arising from the same relationship, the court may certify all amounts through a **standard offset and renouncement process**, ensuring that any verified obligation of one party is reduced or extinguished by the quantified damages owed to the other.

Here, the disparity between the parties' positions is extreme. Even under conservative calculation, Appellee's continuing violations of Texas Penal Code § 25.03 have produced an estimated **$981,600 – $1,831,200** in compensable loss of consortium—forty to eighty times greater than the sum Appellee seeks to collect. Until those counter-claims are adjudicated and certified, it would be inequitable and legally unsound for the judiciary or the Executive Branch, through the Office of the Attorney General, to execute enforcement on her behalf. To do so would sanction one party's lawlessness while punishing the other's victimization.

Under the **equitable doctrine of unclean hands**, a litigant who has engaged in continuous violations of court orders and felony-grade interference cannot invoke the court's power to compel performance from the very parent Appellee has unlawfully excluded. Equity requires that one who seeks enforcement must first demonstrate compliance with her own legal obligations. Appellee's four-year campaign of alienation has rendered her hands unclean; Appellee may not simultaneously obstruct the parent-child relationship and profit from the deprivation Appellee created.

Accordingly, any determination of monetary arrears should be held in abeyance and subjected to full accounting and offset once the civil tort actions for **Loss of Consortium (Parent–Child)** and related claims are adjudicated. Only after that process can a true balance be calculated and certified, ensuring that the courts do not perpetuate inequity by enforcing a financial claim in favor of a party whose ongoing misconduct has already caused damages of an exponentially greater magnitude.

# Appendix 2 – Proof of Attempted Service and Return Receipts

**Purpose:**

To substantiate that all required filings and notices were properly served under **Texas Rule of Civil Procedure 21a(b)(3)** and that any claim of "non-service" or "procedural defect" is factually unfounded. This appendix is evidentiary support for your paragraph beginning:

"…Multiple USPS tracking confirmations and return-receipt images show timely attempts at delivery, with written notices left at Appellee's address of record…"



40



41

**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**



**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Courtney Archbold
227 E. Bell Ave
Rockdale T.x. 76567

9590 9402 9164 4225 3859 33

2. Article Number (Transfer from service label)

9589 0710 5270 2258 9196 12

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**



**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**



**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**



**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF APPELLEE 15-25-00155-CV**



**APPELLANT'S REPLY BRIEF TO COURTNEY SINCLAR ARCHBOLD's BRIEF OF
APPELLEE 15-25-00155-CV**

# Appendix 3: Chronological Summary of Preserved Challenges

The following chronological summary is derived directly from the *Milam County Clerk Records – Court of Appeals Submission Dated August 21, 2025*, which compiles all filings, motions, judicial notices, and orders entered under Cause No. CV40037 in the 20th Judicial District Court of Milam County, Texas. This record, transmitted to the Fifteenth Court of Appeals via the Third Court of Appeals, reflects the complete procedural history and preservation of issues for appellate review. Each entry below is identified by its date, title, and filing party, with concise explanatory notes summarizing its legal purpose and relevance to the constitutional and jurisdictional questions now before this Court.

**"This chronology demonstrates Appellant's consistent effort to challenge jurisdiction, preserve constitutional objections, and seek judicial clarification at every procedural stage"**

**April 23, 2021 – Final Decree of Divorce**
• Established child support and visitation terms under a binding contractual decree.
• Serves as the controlling contract defining the rights and obligations of both parties.

**October 30, 2024 – Motion for Enforcement of Child Support (Filed by Office of the Attorney General)**
• The OAG initiated enforcement proceedings under *Cause No. CV40037* seeking collection of alleged arrears.
• Filing marked the beginning of the current chain of enforcement actions now under appellate review.

**December 2, 2024 – Service of Citation and Motion for Enforcement Completed on Appellant**
• Appellant was formally served with the OAG's enforcement motion and citation.
• This date triggers the 20-day response period under Tex. R. Civ. P. 99(b), setting the response deadline for December 23, 2024.

**December 23, 2024 – Motion to Dismiss for Gross Material Breach of Contract (Filed by Appellant Neil G. Switkowski)**

48

• Filed within the 20-day response window following service of citation.

• Asserts that Archbold's willful denial of visitation constitutes a state-jail felony under Penal Code §25.03.

• Argues that a party in felony violation cannot enforce a civil contract or invoke court aid while in default.

**January 6, 2025 – Motion for Declaratory Relief and to Dismiss Child Support Enforcement (Switkowski)**

• Challenges continuing post-divorce jurisdiction and enforcement absent mutual consent.

• Invokes constitutional protection for marriage and dissolution under *Loving*, *Yick Wo*, and *Bruen*.

**January 6, 2025 – Motion to Reform Child Support Calculations and Enforcement (Switkowski)**

• Proposes an expense-based calculation model tied to Tex. Fam. Code §154.001(a).

• Argues that current Title IV-D practices incentivize conflict and violate due process.

**January 6, 2025 – Motion for Sanctions Against the Office of the Attorney General (Switkowski)**

• Raises clean-hands and public-policy violations for aiding a party in felony violation.

• Identifies Title IV-D financial incentives as an unconstitutional conflict of interest.

**February 5, 2025 – Motion for Default Judgment for Failure to Produce Discovery (Switkowski)**

• Notes Archbold's continued refusal to provide visitation records.

• Requests adverse inference and judgment by default.

**February 5, 2025 – Reset Order on Motion for Enforcement and Suit for Modification of Support (Court)**

• Court resets pending enforcement hearing on OAG's modification suit.

• Maintains temporary enforcement posture pending further filings.

**March 3, 2025 – Response to OAG Motion to Dismiss (Switkowski)**

• Contests OAG standing and authority absent certification of statutory jurisdiction.

• Argues that Title IV-D actions in non-assistance cases constitute fraud upon the court.

**March 3, 2025 – Response to OAG General Denial (Switkowski)**

• Rebuts OAG's blanket denial and insists on judicial certification of constitutional questions.

• Preserves all procedural and substantive objections for appellate review.

**March 27, 2025 – Motion for Default Judgment for Willful Violation (Switkowski)**

• Cites Archbold's ongoing obstruction of visitation as repeated contempt of decree.

• Requests judgment recognizing pattern of felony interference under §25.03.

**March 27, 2025 – Response to Petitioner's Motion to Strike and Request for Sanctions (Archbold/OAG)**

• Seeks dismissal of Switkowski's filings as frivolous or repetitive.

• Requests court sanctions and limitation on future filings.

**May 1, 2025 – Notice of Constitutional Challenge (Switkowski)**

• Filed under Gov't Code §402.010 to challenge Title IV-D and Fam.  Code §§154 & 157.

• Notifies Attorney General of statewide constitutional questions on jurisdiction and funding.

**May 1, 2025 – Amended Motion to Reform Child Support Calculations and Enforcement (Switkowski)**

• Updates expense-based formula and eliminates income percentage bias.

• Offers model for constitutional compliance and fiduciary neutrality.

**May 1, 2025 – Motion for Judicial Certification, Stay of Proceedings, and Temporary Injunction (Switkowski)**

• Invokes Tex.  R.  App.  P.  57.2 requesting certification to the Texas Supreme Court.

• Seeks stay of all enforcement and incarceration pending resolution of constitutional questions.

**May 20, 2025 – Order Enforcing Child Support Obligation (Court)**

• Finds Switkowski in contempt for arrears and sets purge conditions.

• Entry forms the basis of the current appeal to the Third Court of Appeals.

**May 28, 2025 – Judicial Notice: Live and Specific Constitutional Controversy (Switkowski)**

• Asserts live constitutional dispute subject to appellate review.

• Establishes standing for direct judicial consideration.

**May 28, 2025 – Judicial Notice: OAG Does Not Represent the Best Interest of the Child (Switkowski)**

• Challenges OAG's fiduciary legitimacy and statutory role in non-assistance cases.

• Argues that enforcement actions serve state profit, not child welfare.

**May 28, 2025 – Judicial Notice: OAG Is a Financially Interested Party (Switkowski)**

• Demonstrates OAG's dependency on federal Title IV-D reimbursements.

• Establishes constitutional conflict of interest undermining neutrality.

**June 13 2025 – Notice of Appeal Filed in Court of Appeals**

• Perfects appeal to the Third Court of Appeals under Cause No. 03-25-00416-CV.

• Preserves all constitutional and procedural challenges for higher review.

**June 17 2025 – Appearance of Counsel Filed**

• Records formal representation and contact information for Appellant.

**June 25 2025 – Docketing Statement Filed**

• Provides jurisdictional basis and issues on appeal for COA docketing.

**June 27 2025 – Document Filed**

• Supplemental material entered to complete record for appellate submission.

**July 18 2025 – Clerk's Record Filed with Court of Appeals**

• Milam County District Clerk transmits certified record to the Third Court of Appeals.

**July 21 2025 – Fee Paid**

• Payment confirmation for appellate filing fees.

**July 24 2025 – Notice of Late Record**

• Court issues notice to court reporter for delayed reporter's record.

**July 25 2025 – Court Reporter Notice of Record Status**

• Reporter advises no payment arrangements were made for transcript preparation.

**August 25 2025 – Brief Received (Oral Argument Requested)**

• Appellant's brief accepted for filing pending final verification.

**August 27 2025 – Motion to Quash Filed (Appellant)**

• Challenges OAG standing and participation absent judicial certification of authority.

**August 28 2025 – Appellant's Brief Filed (Oral Argument Requested)**

• Consolidates constitutional arguments under *Loving*, *Bruen*, and *Yick Wo*.

• Requests certification of constitutional questions to the Texas Supreme Court.

**September 2 2025 – Supplemental Clerk's Record Filed**

• Includes additional motions and judicial notices for complete appellate review.

**September 23 2025 – Appellee's Brief Filed (Office of the Attorney General)**

• Defends trial court dismissal under Tex. Fam. Code § 231.016.

• Claims OAG acted within statutory authority and Appellant lacks standing.

**September 24 2025 – Letter Issued by the Court**

• Acknowledges receipt of Appellee's brief and sets response timeline.

**September 26 2025 – Letter Filed**

• Administrative entry confirming notice of Appellee filings.

**September 29 2025 – Appellee's Brief Filed (Courtney Sinclair Archbold)**

• Asserts Appellant's filings were unserved and frivolous.

• Defends enforcement order and requests affirmance.

**September 30 2025 – Supplemental Clerk's Record Filed**

• Adds certified orders and trial motions omitted from initial record.

**October 2 2025 – Appellee's Brief Filed (Oral Argument Not Requested)**
• Final version of OAG's brief entered into record.

**October 13 2025 – Response Filed (Appellant – 15th COA Response)**
• Addresses transfer status and procedural issues arising from § 27a letter.

**October 15 2025 – Case Transferred to Fifteenth Court of Appeals**
• Transfer order issued under Tex.  R.  App.  P.  27a.
• Case renumbered **15-25-00155-CV** and jurisdiction accepted by Fifteenth Court.

**October 15 2025 – Order Entered (Transfer Order and Notice)**
• Official order finalizing transfer and notifying all parties.

**October 20 2025 – Appellant's Reply Brief Filed (Pending Acceptance)**
• Seeks reversal of § 231.016 dismissal and certification of constitutional questions.
• Requests stay of enforcement and acknowledges systemic Title IV-D fraud impacting similarly situated citizens.

"From the initial Motion to Dismiss for Gross Material Breach of Contract through the current appeal before the Fifteenth Court, Appellant has raised a single continuous jurisdictional question: **how may the Office of the Attorney General assert authority in a private contract dispute when neither party has assigned rights under Tex.  Fam.  Code §§ 231.101 or 231.104, no public funds have been expended, and the participating party was herself in felony violation of § 25.03?**

Each successive filing, from motions for sanctions, declaratory relief, and reform, through discovery enforcement has consistently preserved this challenge and documented the OAG's ongoing failure to answer.  The record therefore establishes both factual and constitutional fraud: a party in breach and a state agency acting without jurisdiction joined in a profit-driven enterprise under Title IV-D."

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107067287
Filing Code Description: Other Brief
Filing Description: APPELLANT'S REPLY BRIEF TO THE OFFICE OF THE ATTORNEY GENERAL'S BRIEF OF APPELLEE
Status as of 10/21/2025 7:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| COURTNEY ARCHBOLD | | Courtneyarchbold@gmail.com | 10/20/2025 5:21:02 PM | SENT |
| NEIL G.SWITKOWSKI | | ns512atx@gmail.com | 10/20/2025 5:21:02 PM | SENT |
| Deterrean Gamble | | deterrean.gamble@oag.texas.gov | 10/20/2025 5:21:02 PM | SENT |